[Crim. No. 4.   Third Appellate District.—May 24, 1905.]

## THE PEOPLE, Respondent, v. SAM DAVIS, Appellant.

CRIMINAL LAW—BURGLARY IN HOUSE OF ILL-REPUTE—EVIDENCE—MISCONDUCT OF DISTRICT ATTORNEY.—Upon a prosecution for burglary, where it appeared that it was committed in the room of an inmate of a house of ill-repute, the character of which was shown by defendant, though he claimed an *alibi*, evidence was admissible to show the acquaintance of an eye-witness to the burglary with the defendant, the frequency of his visits to the house, and his familiarity with the premises, and his knowledge of the manner in which the prosecuting witness kept her money and other articles of value in her room, and the articles missed by her on the night of the burglary; and there was no misconduct of the prosecuting attorney in introducing such evidence, though it had a tendency to place the defendant in an unenviable light before the jury.

ID.—CROSS-EXAMINATION OF DEFENDANT—RELATIONS TO PROSECUTING WITNESS—JEALOUS RESENTMENT AS TO MARRIAGE—FAILURE TO REMOVE TRUNK.—Where the defendant on direct examination testified freely as to happenings, conduct, and conversations at the house, and as to the jealous resentment and rage of the prosecuting witness when informed of his intended marriage, as being the motive for an unfounded accusation against him, it was proper to cross-examine him as to any matter or period of time embraced in his direct examination, and to question him touching his engagement and marriage, and to show his failure to remove his trunk from that house.

ID.—ARGUMENT OF DISTRICT ATTORNEY—REVERSIBLE MISCONDUCT NOT SHOWN.—It was not misconduct justifying a reversal ·for the district attorney to denounce the theory and the credibility of the defendant and severely to criticise him from his own evidence; nor to allude to the women as of negro extraction, where the testimony shows that one was colored, and their appearance on the stand may have indicated it; nor to charge that defendant was living off the earnings of the prosecuting witness, where the defendant introduced evidence that he obtained money from her.

ID.—REFUSAL OF INSTRUCTIONS—DUTY OF INDIVIDUAL JURORS.—It was not error to refuse requested instructions addressed to the duty of individual jurors.

ID.—PRESUMPTION OF FAIR CHARACTER.—An instruction as to the presumption of the fair character of the defendant was properly refused where the evidence does not warrant a presumption as to his general fair character, and the instruction was too broad in not being limited to the traits of character necessarily involved in the particular case.

ID.—REQUESTS COVERED BY CHARGE.—It is proper to refuse requested instructions covered by the charge of the court.

ID.—PROPER INSTRUCTIONS—CRIMINAL INTENT—PROVINCE OF JURY.—Instructions based upon the evidence and stating that the intent to commit larceny must exist at the time of the entry, and instructions merely restating the principle that jurors are the exclusive judges of the weight and sufficiency of the evidence stated elsewhere in the charge, and that their judgment as reasonable men is the test of their right to believe or disbelieve the testimony of a witness, were properly given.

ID.—OMISSION OF QUALIFICATION—INSTRUCTIONS TO BE CONSTRUED TOGETHER.—Instructions must be taken together as a whole, and the omission of a qualification in one instruction, given at the request of the people, where the omitted qualification is plainly stated in other instructions given at the request of the defendant, could not have misled the jury.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION—CUMULATIVE EVIDENCE.—A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the court, which is not abused in denying the motion where the newly discovered evidence is merely cumulative.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. J. E. Prewett, Judge.

The main facts are stated in the opinion of the court.

Instructions 10, 17, and 18 related to the duty of individual jurors, and instruction 19 was covered in substance by the charge of the court.

L. L. Chamberlain, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

McLAUGHLIN, J.—The defendant was convicted of burglary, and appeals from the judgment and an order denying his motion for a new trial.

We will notice only assignments of error discussed by counsel for appellant, assuming that all others are waived.

1. It is first urged that the district attorney and his as-

sistant, upon the examination of witnesses, and in argument, indulged in misconduct calling for reversal, and that the trial court likewise transgressed to the detriment of defendant.

It appears from the evidence and the unchallenged statement of counsel for appellant that Lillie Banks and Bertha Hodge were inmates of a house of ill-repute in Chinatown at Auburn. The burglary charged consisted of entering the room of the former in said house with intent to commit larceny.

Bertha Hodge was the principal witness for the prosecution, and testified that after midnight on July 17, 1904, she saw the defendant go up the back stairs of this house, and presently thereafter saw him standing by a dresser in the room occupied by Lillie Banks, taking some money from the latter's purse. That later he came out, said he wanted to see Lillie, and went the way he came. During her examination many questions were asked and answered touching her acquaintance with defendant and the frequency of his visits to this house.

The prosecuting witness Banks was allowed to testify as to defendant's familiarity with the premises, and his knowledge of her manner of keeping money and other articles in the dresser and room. She also enumerated articles missed by her that night.

Upon this examination, and the arguments of counsel touching the facts elicited, many charges of misconduct against counsel and court are based.

The evidence was certainly relevant. It tended strongly to show that the witness Hodge could not have been mistaken as to the person she saw in that room that night, and accounted for the rapidity and certainty of movement manifested by the intruder.

If any doubt as to its relevancy existed at the time of its introduction, that doubt must have vanished when the accuracy and credibility of the witness Hodge were directly assailed by evidence tending to prove an *alibi*.

True, such evidence had a tendency to place defendant before the jury in an unenviable light, but it was admissible under the same rule which would make it unquestionably proper had it related to a similar occurrence in a house occupied by respectable people. The character of the house was

placed before the jury by defendant, and its character could not affect the admissibility of the evidence assailed.

It is argued that the cross-examination of defendant touching his engagement and marriage, and his failure to take his trunk from that house was erroneous, and as the objection of misconduct pertains thereto that phase of the case will be examined now.

Most, if not all, of the evidence as to the woman's connection with the trunk and defendant's relations with her, came before the jury through defendant's agency, and the defendant in direct examination introduced the subject of marriage.

In his direct examination he testified fully as to happenings, conduct, and conversations at that house, and it was perfectly competent to cross-examine him touching everything which occurred during the period covered by the direct examination, including his failure to remove his trunk from the house where the irate Miss Banks was domiciled. (*People* v. *Teshara,* 141 Cal. 636, [75 Pac. 338] ; *People* v. *Russell,* 46 Cal. 123.)

In his direct examination, as well as in the direct and cross-examination of other witnesses, there was an evident attempt to make it appear that the woman Banks when informed by him of his intended marriage became enraged and threatened to cut the heart out of any woman he married, and that the subsequent unfounded accusation against him was the result of her jealous resentment. In view of this fact his conduct was very significant, and the prosecution certainly had the right to cross-examine him as to any matter or period of time embraced in his direct examination.

Sufficient has been said to indicate that the charges of misconduct, and errors assigned relating to the testimony above referred to, are not well taken.

Nor was there error in rulings as to other evidence offered by the prosecution. Most of the matter objected to was admissible under well-settled rules of law (Code Civ. Proc., secs. 1870, subd. 3, 1881, subd. 1), and that which was not admissible was either excluded when offered or subsequently stricken out.

Other assignments of error relating to the admissibility of evidence have been carefully examined and we are satisfied that no prejudicial error was committed.

No substantial right of defendant was prejudiced by the remarks of the court here criticised. .

Turning to alleged misconduct in argument and in the opening statement, we find no error sufficient to justify reversal.

One theory of the defense, clearly deducible from the evidence, was, that this prosecution was but the malicious attempt of an abandoned woman, inspired by jealous hatred, to ruin a man who had turned away from her.

Argument touching this theory and the degree of credit which should be accorded the testimony of these women and this defendant, did bring upon him severe and scathing criticism. But evidence upon which it was based was in the case through his election, and under these circumstances he can hardly complain. It is said that there is no evidence justifying the assertion in argument that the women were of negro extraction. Doubtless their appearance on the stand indicated such fact, and there is some evidence that one of them was "colored." It is also urged that it was improper to charge that defendant was living off the earnings of Lillie Banks, but defendant himself introduced evidence showing that he obtained money from her.

The references to the presence of his mother and other relatives during the trial might well have been omitted, but these references were as apt to help as to injure defendant, and too often attempts to arouse sympathy for defendants in this way make such references proper if not necessary, and there is nothing before us to show that it was not proper here.

It follows that there was no such misconduct as would justify reversal. (*People* v. *Wells,* 100 Cal. 459, [34 Pac. 1078] ; *People* v. *Ward,* 105 Cal. 340, [38 Pac. 945] ; *People* v. *Romero,* 143 Cal. 458, [77 Pac. 163] ; *People* v. *Perry,* 144 Cal. 753, [78 Pac. 284].)

There was no impropriety in the opening statement. (*People* v. *Lewis,* 124 Cal. 559, [57 Pac. 470].)

2. Instructions numbered 10, 17, 18, 19, requested by defendant, were properly refused. (*People* v. *Rodley,* 131 Cal. 259, [63 Pac. 351] ; *People* v. *Perry,* 144 Cal. 754, [78 Pac. 284].)

There was no error in refusing instruction numbered 13 requested by defendant. We have seen that there was evi-

dence in the case which would hardly permit an instruction carrying with it the presumption that his general character was fair.

Besides, the instruction was altogether too broad. A defendant is clothed with a fair character for the purposes of the case. (*People* v. *Fair*, 43 Cal. 149.)

But this presumption extends only to traits of character necessarily involved in the particular case. If defendant's veracity, honesty, or any other trait is in issue it applies. But it would hardly be contended that in a case of assault, evidence as to chastity or honesty would be relevant, and we are of the opinion that this presumption applies only where *evidence* to the same effect would be proper. (*Ackley* v. *People*, 9 Barb. 609; *Danner* v. *State*, 54 Ala. 127.[1])

Instruction numbered 20, also requested by defendant, was properly refused, the substance thereof being covered by other instructions.

Nor was there error in modifying instruction numbered 23.

There was no error in giving instruction numbered 9, requested by the prosecution. It was predicated upon evidence in the case, and as it expressly states that the intent to commit larceny must exist at the time of *entry, People* v. *Lowen*, 109 Cal. 381, [42 Pac. 32], has no application.

Instruction numbered 25, given at the request of the people, is not erroneous. It is but a restatement of the principle that juries are exclusive judges of the weight and sufficiency of evidence, stated elsewhere in the charge. The jurors were told that their judgment as reasonable men is the test of their right to believe or disbelieve the testimony of a witness, and this of necessity is the rule governing the exercise of the discretion mentioned in section 2061 of the Code of Civil Procedure.

Instruction numbered 14, given at request of the people, standing alone would be objectionable, as omitting the elements that possession must be recent and unexplained. But instructions must be viewed in the light of evidence to which they apply, and the only evidence of possession in this case was confined to a period of three days after the offense, and the defendant denied such possession *in toto*, only explaining

---

1 25 Am. Dec. 665.

that one article, a collar, was never in the possession of the prosecuting witness.

Again, instructions must be read as a whole, and this instruction, read in connection with instructions 28 and 29, given at the request of defendant, where the omitted elements were plainly stated, could not have misled the jury. (*People v. Gleason,* 122 Cal. 372, [55 Pac. 123] ; *People v. Morine,* 61 Cal. 367; *People v. Gibson,* 106 Cal. 458, [39 Pac. 864] ; *People v. Worden,* 113 Cal. 569, [45 Pac. 844] ; *People v. Jackson,* 138 Cal. 462, [71 Pac. 566].)

The instruction was general in its nature, and therefore it did not and could not assume a fact not proven. It contains no intimation that defendant had committed larceny.

We think the instruction given by the court of its own motion, though perhaps unnecessary, was not erroneous. It is not within the rule invoked by counsel, and if it was the testimony of the district attorney is of such slight importance that the instruction could have caused no prejudice.

3. A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial court, and unless it clearly appears that this discretion was abused the conclusion of the trial court will not be disturbed. (*People v. Buckley,* 143 Cal. 392, [77 Pac. 169].) The newly-discovered evidence was entirely cumulative, and hence no abuse of discretion here appears.

The judgment and order are affirmed.

Buckles, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 26, 1905, and a petition to have the cause heard in the supreme court after judgment in the district court of appeal was denied by the supreme court on July 21, 1905. (See 147 Cal. 346.)

The following is the opinion of the district court of appeal denying a rehearing:—

McLAUGHLIN, J.—Ordinarily the formal order would be the only response to a petition for rehearing.

But mistaken brevity in the opinion filed, having led counsel of recognized ability to the belief that we had based the decision on mistaken facts, prompts a departure from the rule in this instance. We have again carefully examined the evidence and specifications. only to reach the same conclusion.

All that reached the jury touching the character of the house came into the case through defendant's agency, and the character of the inmates necessarily came with it. Strong and convincing evidence of defendant's relations with the woman Banks was presented to the jury through the same channels, and that which came to the jury through the prosecution was admissible under well-settled rules of evidence.

The testimony of defendant alone tells the story of his relations with her. Jurors must be credited with average intelligence, and it needs no more to know that early morning visits to the room of a prostitute, borrowing money from her, and stirring her to wrath and threats by the story of contemplated marriage, indicate more than a merely casual and platonic intimacy. And when to this is added the testimony of William Campbell and George Storrs, it needs not her possession of his trunk or other facts wrung from Lillie Banks and other witnesses on unwarranted cross-examination to remove all doubt as to what their relations were.

True, some evidence as to their relations did reach the jury through the prosecution, but more of it was part and parcel of testimony touching his admissions of guilt. These admissions were none the less admissible because they were made to a prostitute while he was seated upon the bed of shame in which she was lying.

His familiarity, his admissions, and conduct incompatible with his innocence, were relevant facts, and pertinent evidence cannot be excluded merely because it savors of the brothel and carries with it the stigma of infamy. Besides, the bulk of it came in without objection. (*People* v. *Lane,* 101 Cal. 517.)

The court sustained objections to and struck out answers to the two questions so bitterly complained of. The refusal to check counsel by express command was neutralized by counsel refraining from further questioning.

Ordinarily irrelevant questions tending to show other wrongful acts or moral depravity would be prejudicial, but when a defendant through his own lips and witnesses writes his shame upon the record, it would be sticking in the bark to hold that mere insinuations could injure.

Section 1404 of the Penal Code commands that error shall be disregarded, "unless it has actually prejudiced the

defendant, or tended to his prejudice in respect to a substantial right," and it would be a travesty on justice to say that these questions or even the answers to them could degrade or injure a man in the eyes of a jury when he calmly told the same jury of frequent visits, borrowing money, and the wrath inspired in the breast of a prostitute when he told her he was to be married. During the cross-examination of these women, Dependener, as well as in the examination of defendant's witnesses, there was a shrewd, skillful, and persistent attempt by adroit and ingenious questioning to make it appear that there was no talk or thought of crime or prosecution until after this woman knew defendant was to marry. These witnesses had testified to his incriminating statements and conduct, and Lillie Banks said he never told her of marriage, and on one occasion had said that he came after his trunk and clothes. Following all other witnesses, the defendant contradicted the evidence as to his statements and conduct. He gave entirely different versions of such conversations and the reasons for his presence in the house. He told what Lillie Banks said when told of his matrimonial intentions, and attempted to account for his conduct and acts from Saturday night until the time of his last visit to the house. He, too, testified that he heard nothing of crime or prosecution until after this matter of marriage had been bruited.

His cross-examination was confined to matters brought out in direct examination. It was competent to test his credibility by asking questions tending to show that there was no engagement or thought of marriage at the time he says he told Lillie Banks of his impending marriage, nor until some days after he went to Sacramento. The question as to why he did not remove his trunk and clothing when about to make his wedding trip was also proper in this connection, and for the further reason that he had denied all such conversations testified to by Dependener and the women.

The sharp conflict in the evidence, defendant's credibility as contrasted with the credibility of the women, and the theory that he was innocent and the prosecution a conspiracy, hatched after marriage, excused and rendered non-prejudicial, if it did not entirely justify, the argument.

The petition for a rehearing is denied.

Chipman, P. J., and Buckles, J., concurred.