[Crim. No. 1173.  Second Appellate District, Division One.—February 6, 1925.]

THE PEOPLE, Respondent, v. ROBERT ALTON BROWN, Appellant.

[1] CRIMINAL LAW—GRAND LARCENY—OTHER OFFENSES—EVIDENCE—WAIVER.—In a prosecution for grand larceny, where evidence (to which objection was made by defendant) relating to a separate criminal offense not charged against defendant, was first brought out on cross-examination conducted by defendant's counsel, and thereafter, on redirect examination of the witness and against defendant's objection, the objectionable evidence was repeated, if any harm resulted to defendant by reason of the circumstance, it was nothing of which defendant has a right to complain.

[2] ID.—GIVING PART OF CONVERSATION—EVIDENCE.—In such prosecution, the trial court did not commit error in permitting a witness to testify to that part only of a conversation which he heard between the defendant and police officers containing references to a sale by defendant of a ring belonging to a third party, who was not present at the conversation, where such witness merely narrated what at that time another person had told defendant what said third party had said; and such being the case, the statement made by the witness was a part of the conversation which he had heard, and, assuming that the conversation itself was admissible (of which no question is raised), the part to which objection was made was also admissible.

[3] ID.—ADMISSION OF PAWN TICKETS—HANDWRITING—ABSENCE OF ERROR.—In such prosecution, there was no error in the admission of certain pawn tickets purporting to have been signed by one "Arthur Bates" and covering one or more articles of jewelry which were the subject of the larceny, where certain other pawn tickets, admittedly signed by defendant, were made exhibits in the case for the express purpose of affording a comparison of the handwriting of the signature "Arthur Bates" with the acknowledged handwriting of defendant.

[4] ID.—EVIDENCE.—In such prosecution, where in response to the question, "Now, when you went to this pawn-shop, did they show you a stub?" a witness replied: "That was across the street there, this place that they showed me that stub," the answer, while probably not directly responsive to the question, nevertheless, in a way, did answer the question; and even assuming that defendant's motion to strike out the answer on the ground that it was not responsive to the question should have been granted, the

error was of so little consequence that it cannot be seriously considered as a ground of reversal of the judgment.

[5] ID.—SPECIFICATIONS OF ERROR.—Mere specification of error will not suffice. The rule is that in order to avail an appellant, error must be shown to have prejudicially affected his case.

[6] ID.—ABSENCE OF OBJECTION TO EVIDENCE—WAIVER—APPEAL.—In such prosecution, where no objection was made to certain evidence at the time it was introduced, it is too late on appeal for the defendant to take advantage of any alleged error occurring through the reception of such evidence.

[7] ID.—WHEN SPECIFICATION OF ERROR REQUIRES NO CONSIDERATION. In such prosecution, a specification of error in sustaining an objection to a question asked by defendant requires no consideration, where such specification is unaccompanied by either argument or citation of authority and the materiality of the question is not shown, nor is it apparent to the court.

[8] ID.—OBJECTIONS—WAIVER—APPEAL.—In such prosecution, it is too late for defendant to contend on appeal that the trial court erred in permitting certain evidence to go to the jury, where an examination of the record discloses the .fact that no objection was interposed by defendant to any of the questions affecting the matter to which objection is made on appeal, and no motion was made by defendant to strike such evidence from the record.

[9] ID.—RECEPTION OR REJECTION OF EVIDENCE—ABSENCE OF PREJUDICIAL ERROR.—In such prosecution, errors, if any, in the reception or rejection of offered evidence must be regarded as though they had not occurred, where the majority of them are not seriously presented, and where, with reference, to those which are urged at all, the matters which they cover are of very slight importance and, had they been acted upon most favorably to defendant's advantage, could not possibly have affected the outcome of the case.

[10] ID.—PRODUCTION OF EVIDENCE—INSTRUCTIONS.—In such prosecution, the trial court did not err in refusing defendant's request to instruct the jury in the language of subdivision 7 of section 2061 of the Code of Civil Procedure "that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the party, the evidence offered should be viewed with distrust," where it appeared that if the presence of certain witnesses was desired at the trial, defendant was as able to procure their attendance as was the prosecution.

[11] ID.—REFUSED INSTRUCTIONS COVERED BY GIVEN INSTRUCTIONS.— Where the substance of a requested instruction is covered by

10. Presumption from failure to produce evidence, note, Ann. Cas. 1914A, 909. See, also, 10 R. C. L. 886; 10 Cal. Jur. 781.

other instructions given to the jury, the defendant has no cause
for complaint; and in this prosecution for larceny a comparison
of the legal principles contained in instructions requested by
defendant, but refused by the trial court, with those contained in
the instructions which were given to the jury leaves no sub-
stantial ground for believing that the jury was not fairly in-
formed with reference to the law of the case.

[12] ID.—INSTRUCTIONS—ABSENCE OF REQUEST FOR—WAIVER.—In such
prosecution, if the defendant had thought that an instruction
was proper for the purpose of singling out and emphasizing
certain matters appearing in evidence as being proper subjects
for the application of the rule contained in given instructions
that "a witness may be impeached by evidence that he has made
at other times statements inconsistent with his present testimony,"
and that "a witness false in one part of his or her testimony
is to be distrusted in others," he should have presented it for
the consideration of the trial court; and even assuming that
the defendant is right in his contention that the trial court
should have given such an instruction, such omission cannot on
appeal be allowed as prejudicial error.

[13] ID.—REMARK BY TRIAL JUDGE—ABSENCE OF ERROR—INSTRUCTION.
In such prosecution, defendant cannot successfully contend that
an instruction given by the trial court to the effect that any ex-
pression of opinion of the court as to matters of fact was to be
entirely disregarded by the jury was not specific enough to cure
a statement made by the judge during the course of the trial
that "there is a conflict between the statements of the defend-
ant," where even if there had been no inconsistency in de-
fendant's testimony, the remark by the court, when considered
with the instruction covering the point, could have produced no
disadvantageous effect on the minds of the members of the jury,
so far as defendant was concerned.

[14] ID.—STATE OF DEFENDANT'S MIND—INSTRUCTION—ABSENCE OF
PREJUDICIAL ERROR.—In such prosecution, while it may be that
in view of the fact that no issue was raised as to the state
of defendant's mind, any reference thereto was unnecessary, still
defendant was not harmed by an instruction relating to the
intent with which an act is done, that is, that such intent must be
manifest by the circumstances connected with the offense and the
sound mind and discretion of the accused, and concluding with
the statement that "all persons are of sound mind who are
neither idiots or lunatics or affected with insanity."

[15] ID.—POSSESSION OF STOLEN PROPERTY—PROPRIETY OF INSTRUC-
TION.—In such prosecution, it was proper to give an instruction

---

15. Possession of stolen property as evidence of guilt, note, 101
Am. St. Rep. 481; 19 Ann. Cas. 1281. See, also, 15 Cal. Jur. 955.

that "If the jury believe the property was stolen, and was seen in the possession of defendant shortly after being stolen, the failure of the defendant to account for such possession, or to show that such possession was honestly obtained, is a circumstance tending to show his guilt, and the accused is bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the evidence discloses any such."

(1) 17 C. J., p. 211, n. 4. (2) 40 Cyc., p. 2196, n. 13. (3) 16 C. J., p. 621, n. 70. (4) 17 C. J., p. 275, n. 27. (5) 17 C. J., p. 274, n. 22. (6) 17 C. J., p. 56, n. 16. (7) 17 C. J., p. 173, n. 46. (8) 17 C. J., p. 71, n. 47. (9) 17 C. J., p. 318, n. 13, p. 333, n. 95. (10) 16 C. J., p. 1023, n. 72. (11) 16 C. J., p. 1063, n. 85. (12) 16 C. J., p. 1059, n. 42. (13) 17 C. J., p. 297, n. 1. (14) 17 C. J., p. 342, n. 94. (15) 36 C. J., p. 937, n. 48.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

William M. Morse, Jr., for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant was convicted of the crime of grand larceny. He appeals from the judgment and the order denying his motion for a new trial.

By the information defendant was accused of stealing certain articles of jewelry of the alleged aggregate value of eight hundred dollars. The evidence introduced on behalf of the prosecution showed that on the afternoon of March 13, 1924, several persons, including defendant, were visiting at the home of the prosecuting witness, at which time, in the presence of defendant, the prosecuting witness took the jewelry from a secret vault in a mantelpiece in his home and exhibited it to his guests. Five days later the prosecuting witness discovered that his jewelry was gone, and reported the loss thereof to the police authorities. At that time defendant was interviewed by an officer at the police station

regarding the loss of the jewelry. He denied having any knowledge of its whereabouts and, in the absence of sufficient incriminating facts, was released from custody. About two months later defendant was again taken into custody, at which time several of the stolen articles were found on his person, and the greater part of the remainder thereof was discovered in a pocket of a vest in the clothes-closet of defendant's bedroom. One piece of the stolen jewelry was recovered from a pawn-shop, where the jury was justified in believing from the evidence that, under an assumed name, the defendant had borrowed some money and deposited such article as security for the debt. Defendant accounted for his possession of the jewelry by stating that he had found it in his overcoat pocket a few days after he had been at the home of the prosecuting witness, and after he had been first questioned at the police station regarding the matter. Defendant also claimed to have obtained a matchbox, which was one of the stolen articles, from a man by the name of Pierce. Mr. Pierce, however, denied defendant's statement in that regard. It appeared also that at the time the jewelry was exhibited by the prosecuting witness one of the guests who was present lost a valuable Spanish shawl, which was later returned by defendant to the owner thereof.

The first reason advanced by appellant for a reversal of the judgment against him is that the trial court committed prejudicial error in permitting the prosecution, over defendant's objection, to introduce evidence relating to a separate criminal offense not charged against him. The matter related to the loss of the Spanish shawl by one of the persons who was at the home of the prosecuting witness at the time he was exhibiting the jewelry which was afterward stolen. Under cross-examination by defendant's counsel, a witness gave the following testimony:

"Q. And you didn't have any reason to believe at that time that Brown (defendant) might be the person who took it, either, did you? A. Yes.

"Q. Did you have some suspicion? A. Yes.

"Q. Tell me what it was. A. Because there was a shawl missing, that turned up and afterwards he brought back."

Subsequently the same evidence was adduced on redirect examination of the same witness.

[1] Considering that the record discloses the fact that the matter to which objection was made was first brought out on cross-examination conducted by defendant's counsel, and that thereafter, on redirect examination of the witness and against defendant's objection, the objectionable evidence was repeated, we are convinced that if any harm resulted to defendant by reason of the circumstance it was nothing of which appellant has a right to complain.

[2] The next specification of error by appellant relates to a part of a conversation had among defendant and certain police officers. It appears that the witness did not hear all the conversation, and related that part only which he had heard. Appellant insists that one who has not heard all of a material conversation is precluded from narrating any part of it. No authority is cited by appellant to sustain his position in that regard. The conversation to which the witness testified contained references to a sale by defendant of a ring belonging to a Mrs. Salisbury. With reference thereto, the further point is made that the testimony was hearsay in that the witness attempted to tell what Mrs. Salisbury, who was not present at the conversation, had said concerning the matter. An examination of the record shows that the witness was merely narrating what at that time another person had told defendant that Mrs. Salisbury had said. Such being the case, the statement made by the witness was a part of the conversation which he had heard, and, assuming that the conversation itself was admissible (of which no question is raised), the part to which objection was made was also admissible.

[3] Appellant also complains that certain pawn tickets purporting to have been signed by one "Arthur Bates," and which tickets covered one or more of the articles of jewelry which were the subject of the larceny in the case on trial, were introduced in evidence and that there was no evidence that the signature "Arthur Bates" was in defendant's handwriting. However, while there was no direct evidence to that effect, certain other pawn tickets, admittedly signed by defendant, were made exhibits in the case for the express purpose of affording a comparison of the handwriting of the

signature "Arthur Bates" with the acknowledged handwriting of defendant. The evidence was properly admitted.

[4] Another specification of alleged error is connected with the matter just mentioned. A witness was asked: "Q. Now, when you went to this pawn-shop, did they show you a stub?" to which question the witness replied: "A. That was across the street there, this place that they showed me that stub." Defendant's motion to strike the answer on the ground that it was not responsive to the question was denied, and appellant urges that the action of the court was error. While the answer may not be directly responsive to the question, nevertheless, in a way, it does answer it. No attempt is made by appellant to show any resultant damage to defendant; and even assuming that the motion to strike should have been granted, the error was of so little consequence that it cannot be seriously considered as a ground for reversal of the judgment. A similar situation exists with respect to several other of defendant's exceptions. [5] Mere specification of error will not suffice. The rule is that in order to avail an appellant, error must be shown to have prejudicially affected his case.

[6] Appellant suggests error in that a witness who was detailing a conversation had with defendant was permitted to state that, "I asked him how he could account for the fact that he had this jewelry in his pocket up at his room, and he said that he found it in his pocket, in his overcoat pocket a few days after he had been up to Mr. Payne's house. And I said, 'Well, why didn't you tell us about it at the time that we were up there, when Mr. Payne reported this stuff?' He said then that he hadn't found it yet at that time, and I said, 'Then why didn't you report it after you did find it?' and he didn't give any answer to that."

No objection was made to the evidence at the time it was introduced, and it is now too late for appellant to take advantage of any alleged error occurring through its reception.

[7] In the course of the trial defendant's attorney asked a witness the following: "Q. All the rest of them were arrests, just like you made the first time; take him down some place, and then brought him back and released him; isn't that so?"

The court sustained an objection to the question on the ground that it called for the conclusion of the witness. Like many of the other specifications of error, appellant's presentation of the foregoing alleged error is wanting in that it is unaccompanied by either argument or citation of authority. In addition thereto, the materiality of the question is not shown, nor is it apparent to the court. In such circumstances the point made by appellant requires no consideration by this court.

[8] "Fatal" error is predicated upon the action of the trial court in permitting certain evidence, to which attention is directed, to go to the jury. An examination of the record discloses the fact that no objection was interposed by defendant to any of the questions affecting the matter to which objection is now made; nor was any motion made by defendant to strike such evidence from the record. It is clear that appellant is too late in his contention.

[9] Various other alleged errors, either in the reception or the rejection of offered evidence, are assigned by appellant as reasons why a new trial should be awarded defendant. The majority of them are not seriously presented. Of those which are urged at all, it need only be said that, even assuming that appellant's points with reference thereto are well taken, the matters which they cover in the aggregate are, to say the most for them, of very slight importance and, had they been acted upon most favorably to defendant's advantage, could not possibly have affected the outcome of the case. In such circumstances the errors, if any, must be regarded as though they had not occurred.

[10] It is claimed that the court erred in refusing to give to the jury certain instructions requested by defendant. The first of these was couched in the language of the statute (subd. 7, sec. 2061, Code Civ. Proc.), "that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the party, the evidence offered should be viewed with distrust." The pertinency of the offered instruction is suggested in that certain persons who were present as the guests of the prosecuting witness at the time the jewelry was exhibited were not called by the prosecution as witnesses. It is admitted that the defendant was himself a guest of the

prosecuting witness on the occasion referred to, and it would appear that if the presence of such witnesses was desired at the trial, defendant was as able to procure the attendance of such witnesses as was the prosecution. We are unable to agree with appellant in the application of the statute to the existing facts.

[11] It is contended that the court erred in its refusal to give to the jury the following instruction:

"The court instructs the jury that larceny is the felonious taking of the property of another without the knowledge or consent of the other, and with the intent of the party taking it, at the time of the taking, to permanently deprive the owner thereof, and with the further intent at said time to wholly and permanently appropriate the property so taken to the use of the party taking it. And if you find from the evidence that it was not the intent of the defendant at the time of the taking to wholly and permanently appropriate it to his own use, then you cannot find him guilty of larceny."

The reason assigned by the trial court for refusing the requested instruction was that the subject was covered by other instructions which the court gave to the jury. In this connection it appears that the jury was instructed that "larceny is the felonious taking, . . . of the property of another"; that "the intent or intention with which an act is done is manifest by the circumstances connected with the offense, . . . ; and that "the mere possession of stolen property, unexplained by the defendant, however soon after taking, is not sufficient to justify a conviction," etc.

Another instruction requested by defendant and refused by the court went more fully into the question of intent with which one's property may be appropriated by another, and included an illustration that: "If, to illustrate, a man should take and carry away an article of property in an honest belief that it was his property, or that he had a right to remove it, or if he should take or carry away some article of property for any other purpose than the intent to steal it, it would not be larceny; it would be trespass."

Still another of defendant's proposed instructions which the court declined to give to the jury dealt particularly with the effect of possession by defendant of the stolen property. By a final instruction on the subject of larceny defendant

sought and the court refused to instruct the jury practically in repetition of what was contained in the refused instructions to which reference has just been had.

Several other instructions along different lines, likewise suggested by defendant and refused by the court, such as the credibility to be given to defendant's testimony; the doctrine of reasonable doubt; the duty of the jury to decide the case according to the evidence and the law as given by the court; the presumption of innocence of defendant; and the weight of evidence necessary to justify a conviction—were all substantially covered by other instructions which the court gave to the jury.

While each of defendant's offered instructions which were thus refused would appear to be a correct statement of the law respectively pertaining to the facts in the action, the authorities are clearly to the effect that where the substance of a requested instruction is covered by other instructions given to the jury, the defendant has no cause for complaint. A comparison of the legal principles contained in the refused instructions with those contained in the instructions which were given to the jury leaves no substantial ground for believing that the jury was not fairly informed with reference to the law of the case.

[12] Some general criticisms are presented by appellant with reference to certain of the court's instructions; for example, the instructions which informed the jury that ''a witness may be impeached by evidence that he has made at other times statements inconsistent with his present testimony''; and that ''a witness false in one part of his or her testimony is to be distrusted in others.'' It is contended by appellant that such statements of the law are not broad enough and that the court should have singled out and emphasized certain matters appearing in the evidence as being proper subjects for the application of the rule to which reference was had. No authority is cited for the correctness of appellant's suggestion in that regard. At any rate, if defendant had thought such an instruction proper in the circumstances, he should have presented it for the consideration of the trial court. This he failed to do. Even assuming that defendant is right in his contention (which we are

not prepared to do), as the matter stands, such omission cannot now be allowed as prejudicial error.

[13] Appellant further complains that while the court instructed the jury that any expression of opinion by the court as to matters of fact was to be entirely disregarded by the jury, such instruction was not specific enough to cure a statement made by the judge during the course of the trial that "there is a conflict between the statements of the defendant." An examination of the proceedings of the trial which occurred at the time the court is credited with the foregoing remark shows that defendant was being asked to explain certain supposed inconsistencies in his former testimony. The record shows as follows:

"The Court: There is no conflict in what he testified to this time and what has been read.

"Mr. McGowen (Attorney for Defendant): No, no conflict in the testimony.

"The Court: Yes, a conflict in two points. One is he says he didn't know where she got them when she got them for him to wear. He says here she told him to go and get them. There is a conflict."

Even if there had been no inconsistency in defendant's testimony, the remark by the court, when considered with the instruction covering the point, could have produced no disadvantageous effect on the minds of the members of the jury, so far as defendant was concerned.

[14] In an instruction relating to the intent with which an act is done, that is, that such intent must be manifest by the circumstances connected with the offense and the sound mind and discretion of the accused, the court concluded with the statement that "all persons are of sound mind who are neither idiots or lunatics or affected with insanity." Appellant objects to that matter. Again, no authority is cited to support appellant's contention; nor is any argument attempted other than that it "clouds the issues." It may be that in view of the fact that no issue was raised as to the state of defendant's mind, any reference thereto was unnecessary, but we are unable to perceive in what manner defendant was harmed thereby.

The final contention by appellant relates to a part of an instruction given by the court to the jury as follows:

[15] "If the jury believe the property was stolen, and was seen in the possession of defendant shortly after being stolen, the failure of the defendant to account for such possession, or to show that such possession was honestly obtained, is a circumstance tending to show his guilt, and the accused is bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the evidence discloses any such."

As is said in the case of *People* v. *Gibson,* 16 Cal. App. 347, 350 [116 Pac. 987, 988], where a similar instruction was given: "The giving substantially in the form here used of instructions in like cases has been so often approved by the supreme court that it may be said the propriety thereof has become settled law in this state. (*People* v. *Horton,* 7 Cal. App. 34 [93 Pac. 382]; *People* v. *Etting,* 99 Cal. 577 [34 Pac. 237]; *People* v. *Abbott,* 101 Cal. 646 [36 Pac. 129].)" And see, also, *People* v. *Davis,* 14 Cal. App. 117 [111 Pac. 268]; *People* v. *Luchetti,* 119 Cal. 501 [51 Pac. 707].

We find no prejudicial error in the record. The judgment and the order denying defendant's motion for a new trial should be affirmed. It is so ordered.

Conrey, P. J., and Curtis, J., concurred.