[Crim. No. 440.   Fourth Appellate District.—January 25, 1939.]

THE PEOPLE, Respondent, v. WALDEMAR MATTMUEL-LER, Appellant.

Theodore G. Krumm and E. L. Johnson for Appellant.

No appearance for Respondent.

GRIFFIN, J.—The appellant was charged with the offense of burglary in an information containing two separate counts. The first count alleged generally that on or about the 1st day of October, 1937, he burglarized a certain office and warehouse of the Carlsbad Feed & Fuel Company. In the second count he was similarly charged with burglarizing, on the same date, the office building of the Carlsbad Mutual Water Company. Both buildings were located in Carlsbad, a few blocks distant from each other. To this information and each of the respective counts thereof, the appellant entered a plea

of not guilty. Upon the conclusion of the trial by a jury, the appellant suffered a conviction on both counts of the information. The degree of the offense as stated in each count, was fixed as burglary of the second degree. Judgment was thereafter pronounced and a motion for a new trial was denied. The appeal here perfected is taken not only from the judgment but also from the order denying a motion for a new trial.

This case was previously presented to this court for decision on an appeal from an order granting a motion for a new trial after conviction by a jury. (25 Cal. App. (2d) 418 [77 Pac. (2d) 504].)

A goodly portion of the evidence produced against the appellant may be tersely classified as circumstantial evidence. The attorney-general has not favored us with a brief in this case although the time for filing one has long since passed. However, the factual background, taken from the record, may be thus related.

On the evening of October 1, 1937, some time between the hours of 5:30 P. M. and 6:30 A. M. of the following day, the feed and fuel supply warehouse referred to in the information was entered and burglarized. The entry was made through the rear of the warehouse by using an ordinary woodbit and drill. By the use of the bit a series of holes were drilled through the wooden walls until finally a section of board was removed (later received in evidence), sufficient in size to permit the entry of an individual. There was a tar composition roof on the lean-to at the back of the warehouse over which the burglar passed in making his entrance into the warehouse. There was left in the tar on the roof a heel print, of which photographs were taken and at the trial they were received in evidence. After entry was made into that particular warehouse, a safe of venerable vintage was broken. A series of three nuts were removed from the safe but these efforts were apparently in vain, for the operator was unable to open that particular safe.

The evidence further discloses that some instrument, such as a tire iron or a leaf of a spring sharpened on one edge, had been used in part, in cutting through a partition leading to another room in that same establishment. There is no evidence that would indicate that anything was taken from this building.

On the same night between the same hours, the office building of the Carlsbad Mutual Water Company and the Carlsbad Irrigation District was entered through the rear window by the use of a tire iron or jimmy, and the closed door between the two rooms, which were separately occupied by the above-mentioned companies, was also pried open by the use of the same instrument. There was one ordinary safe located in one of the rooms and a vault recess in the wall in the other room. Those safes were broken into in the same manner by striking off the knob or turning surface of the dial and then striking it with a drill or a punch, removing the center core running to the knob and thence to a series of cylinders in the safe. In this manner entry was effected into the two safes. From one of the safes the sum of $39 was taken.

The appellant lived in San Bernardino with his parents. About dusk on the evening of October 1st, the night those burglaries took place, appellant drove to Oceanside in a car registered in his mother's name and he registered at an auto court there, a distance of less than two miles from the location of these two buildings in which the burglaries took place. One of the back apartments or cabins of the court was selected by appellant, which he testified was for the purpose of removing himself from the noise of the street. This rear apartment or cabin was so situated that entrance might be gained to a rear street without driving out the main entrance to the court.

On the 13th day of October, 1937, the law-enforcement officers arrested appellant as he drove up to his home in San Bernardino in his mother's car. A series of about 30 different items of tools were found in the car. Among them where a brace, screw-drivers, hammers, pliers, and a spring leaf jimmy or tire iron, sharpened on one edge, which fitted quite exactly into the several pieces of studding and door jams which were removed from the building and introduced in evidence at the trial. There was a pair of shoes taken from the trunk of the car of appellant at the time of his apprehension, the soles of which had two identifying worn spots on them. The heels were of the same type, bearing the Florsheim emblem, and coincided exactly with the imprint left on the tar paper roof of the lean-to. Similar imprints were found near the office of the water company and in and about the various pathways leading from these buildings to the

paved highway. No finger prints of appellant were located. Among the articles found in appellant's possession in the glove compartment of the automobile were three cotton gloves, a flash light, ice pick, a bit which precisely fitted the series of holes that were cut in the boarding in the rear of the described building. There were two punches also found there which were of such size that they fitted with a like similarity the holes punched in the safe. The hammer found in the trunk of the car bore worn surfaces on the sides of its head. Two of the wrenches found in the car were such in size as would fit the nuts removed from the safe. Many articles, such as clothing, a hand bag and automobile tools were also found in the automobile.

When appellant was apprehended and questioned, he wanted to know "what good would it do him to talk". Later, he stated that he had not been in San Diego County for a period of about two months prior to the time of his arrest and that he was the owner of the shoes which were found in the car and later received in evidence.

Appellant then took the witness stand in his own defense and gave a general account of the possession of the various tools and the uses to which he placed them in his mining operations, and several defense witnesses attempted to corroborate his statements. Appellant then admitted that he left San Bernardino on October 1st and went through Oceanside and Carlsbad to La Jolla in search of a man by the name of Luther Campbell, whom he had not seen for several years, and after looking at the listings in a telephone book in La Jolla, being unable to find him, he returned to Oceanside that evening, stopping at the court heretofore described and remaining there all night. He then claimed that he returned to his home.

Appellant strenuously contends that the evidence is insufficient to sustain the verdict of the jury. He argues that the evidence is entirely circumstantial; that it does not prove him guilty beyond a reasonable doubt; that the circumstances relied upon by the prosecution are just as consistent with his innocence as with his guilt.

We have enumerated the salient circumstances as they presented themselves to us and as a result thereof we are of the opinion that the circumstances reasonably justify the conclusion of the jury as expressed in their verdict. Therefore,

we cannot reverse the judgment. (*People* v. *Martinez,* 20 Cal. App. 343 [128 Pac. 952] ; *People* v. *Strauss,* 75 Cal. App. 447 [243 Pac. 67] ; *People* v. *Martin,* 16 Cal. App. (2d) 515 [60 Pac. (2d) 1014] ; *People* v. *Garcia,* 83 Cal. App. 463 [256 Pac. 876].)

The only other question presented is claimed prejudicial misconduct on the part of the district attorney in cross-examining the appellant's mother in reference to the occupation of her son. The portion complained of reads as follows: "Q. [By M. Wurfel] : Shortly before October 1st, he had been working in a cigar store there? A. He had, the Magazine Mart. Q. Acting as bookmaker, making books on the races?" At this point the following objection was made, (by Mr. Johnson) : "Just a moment, Your Honor, I take exception to the asking of that question and assign it at this time as prejudicial misconduct on the part of counsel." The court then ruled: "It may be stricken and the jury are instructed to disregard it." The propounding of such questions, under the circumstances, is not to be encouraged. (*People* v. *Podwys,* 6 Cal. App. (2d) 71, 74 [44 Pac. (2d) 377].) However, counsel properly called the improper question to the attention of the court and it was immediately ordered stricken and the jury admonished to disregard it. The propounding of the objectionable question, under the circumstances, was not reversible error. (*People* v. *Chilcott,* 18 Cal. App. (2d) 583 [64 Pac. (2d) 450] ; *People* v. *Bragdon,* 103 Cal. App. 20 [283 Pac. 881] ; *People* v. *Mareck,* 17 Cal. App. (2d) 278 [61 Pac. (2d) 972].)

The judgment and order from which this appeal is perfected must be and are affirmed.

Barnard, P. J., and Marks, J., concurred.