[Crim. No. 647. Fourth Dist. Apr. 21, 1947.]

THE PEOPLE, Respondent, v. CARL OWENS, Appellant.

Abbott C. Bernay and Everett H. Mills for Appellant.

Fred N. Howser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Under an information setting forth two counts of burglary and upon a plea of not guilty entered, defendant was convicted of burglary in the second degree, after a trial before a jury. A charge of a prior felony conviction and service of a term of imprisonment thereunder, was set forth in the information and was admitted at the trial.

Count one charges that on August 22, 1946, defendant entered a drug store in Ontario. Count two charges that on the same date he entered a cafe near that place with intent to commit the crime of theft.

Defendant and appellant first claims that the evidence is insufficient to support the verdict.

Sometime during the night of August 22, 1946, the drug store was burglarized. Mr. Gimmell, the owner, testified that he had been at work about an hour or so on the morning of August 23, when he went to open the front door from within; that it appeared to have been forced open by some instrument similar to a screwdriver; that it had been bolted at the top and bottom and each bolt had been forced out of place; that the police were called and on inspection another door showed an attempt had been made to open it with the same type of instrument. These door parts were removed and brought into court for examination. He then testified, without objection, that "my partner reported" that he had made a sale in the sum of five or six dollars (the denomination of which was not known) after the registers had been cleared, and that a small shipment of named cigars, which had arrived that day, were all missing, as well as one or two sets of fountain pens and pencils that were in a case.

From the evidence produced, there is no question that a burglary of this store had been committed. ■ There was some hearsay evidence received but it was admitted without objection. Defendant should not be heard to complain about the admission of this evidence for the first time on appeal. A fact proved by incompetent evidence is beyond attack on appeal where no objection was made at the trial. (*People* v. *Lorden*, 62 Cal.App. 501, 503 [217 P. 117] ; *People* v. *Brown*, 71 Cal.App. 181, 187 [235 P. 72].)

The proprietor of the cafe testified that on August 22, 1946, as was the custom on Thursdays, his establishment was closed; that about 3:30 in the morning of August 23, he was called by the police to his place of business; that he first noticed a large glass in the rear window facing on Transit Street had been broken out; that when inside, he noticed a lock had been forced on a swinging door; that the back of a "Nickelodion" was broken off and the money box laid on the floor; the mirror on the cigarette machine was broken out and the money box found on the floor; the pin ball machine had been pried open with some kind of an instrument; that nickels, dimes and quarters operate the music machine; that five-cent pieces and dimes operated the cigarette machine; and five-cent pieces operate the marble machine. No money was left in any of them by the burglar, although they had been operating two or three days since last cleared. Several packages of chewing gum were missing from the candy counter; two pairs of children's colored cotton socks (new and fastened together) were found in the alley near the broken window. Parts of a flashlight were also found there. The evidence fully supports the conclusion that there had been a burglary of this cafe. ■ The only question is whether or not the evidence was sufficient to connect the defendant with the commission of the burglary of the cafe and the drug store.

A police officer testified that he was walking the beat that night; that about 8:30 p. m. he saw defendant "standing around" in the alley near these two store buildings; that he asked about his presence and defendant told him he was there taking care of his personal desires which were purely his own affairs; that he inquired why defendant did not go to a neighboring gas station or bar; that he replied he did not know if there was such a place open; that he again saw defendant about 11:30 p. m. one block north of the place where he first encountered him, standing in the same alley; that he asked him what he was doing there and that he said he "didn't know"; that he asked him if he lived in Ontario and he said that he did (defendant in fact lived in Pomona); that he crossed the alley and watched defendant disappear up the street; that about 1:30 a. m. he saw defendant in front of the drug store here involved; that he approached him again and asked him what he was doing there after he had told him to go home; that he asked him for identification and that defendant showed him a driver's license, a draft card, a one-dollar

bill, and some pictures in his wallet; that he said the pictures were of his wife and two children; that he asked him why he kept coming around those streets in that neighborhood and he said his wife was "stepping out" on him and he was "keeping his eye on her, trying to catch her." The evidence shows that his wife and children in fact were in Oklahoma at that time. He then testified that he took defendant to a taxi stand and told him to get out of town; that he checked the doors of the drug store three times up to 12:15 a. m. and at that time there was nothing wrong with them; that the doors and windows at the cafe were not disturbed prior to 11:30 p. m.

A taxi driver testified that he drove defendant about a block and a half from the cab stand; that defendant wanted him to stop; that defendant got out on Transit Street, the alley back of the stores in question, and left for a few minutes in that direction and later returned carrying a sack "like one takes money to the bank in" and a pair of extra long woolen gloves; that the money sack appeared to be full and it was "jingling like metal . . . some type of coins"; that after defendant got back into the cab he took him to Pomona; that during the trip he noticed the defendant was sweating quite a bit and was chewing gum; that he talked with him en route and later delivered him to the public library, at his request, one-half block from his home, and that he went down the street and watched which home defendant later went into.

That morning, after discovery of the burglary, three officers went to the home of defendant in Pomona and searched his apartment. He and his mother lived there. Under the seat in one of the chairs they found one-half roll of dimes and quarters ($2.50), wrapped in brown paper ready for banking. Defendant later admitted that he placed them there. In a drawer in a writing table they found a lot of coins similarly wrapped. In the kitchen were found 50 to 75 coin wrapping papers. In a trunk in the closet they found a money bag. Just outside the front door of the apartment they found, under a hedge, a pair of dark brown woolen gloves. Inside of the gloves was found a screwdriver.

Defendant testified that he had never seen either the gloves or the screwdriver. The taxi driver testified that the gloves "were the same kind" he saw in defendant's possession.

Dr. Candela, after qualifying as an expert, testified that he took scrapings from under defendant's fingernails; that fibers of the woolen gloves compared favorably with the fibers found under defendant's fingernails; that in his opinion those

gloves had been worn by defendant within a relatively short time. A similar examination and comparison was made as to the colored cotton socks found near the cafe with the same result and with the same conclusion.

An expert criminology technician testified that he compared, by microscope, the screwdriver marks on the cigarette machine, music box, and the pieces of wood taken from the doors and windows in evidence; that the marks and the screwdriver had the same dimensions; that the marks were made by that screwdriver or one very similar to it.

Defendant took the stand and on direct examination testified that he had been, three times previously, convicted on burglary charges; that he was in Ontario on the night in question; that he did not know why he went there, it was "just one of those things"; that he took along a "one-fifth" bottle of whiskey in a brown paper sack; that he had been drinking; that he set the bottle down in the alley; that he met the officer on the occasions mentioned and the officer "told the truth about that"; that after the officer told him to take a cab and go home he ordered the cab driver to stop so he could go down the alley and pick up his bottle; that the brown bag and bottle must have been what the taxi driver saw in his hands rather than gloves and a money bag; that he put the bottle on the table at home. The officers failed to find such a bottle. He further testified that the coins found in his home belonged to his mother. He denied ever being in the drug store or cafe. Defendant's mother claimed ownership of the money and the money sack, but she did not know about the money being under the seat of the chair.

Viewing the evidence produced in its most favorable light, it clearly establishes defendant's guilt beyond any reasonable doubt. (Code Civ. Proc., § 1826; *People* v. *Miller,* 171 Cal. 649 [154 P. 468]; *People* v. *Mattmueller,* 30 Cal.App.2d 532 [86 P.2d 838]; *People* v. *Walsh,* 50 Cal.App.2d 164 [122 P.2d 671]; *People* v. *Willmurth,* 77 Cal.App.2d 605 [176 P.2d 102]; *People* v. *Russell,* 34 Cal.App.2d 665 [94 P.2d 400]; *People* v. *Davis,* 1 Cal.App. 8 [81 P. 716, 88 P. 1101].)

■ Defendant next argues that the trial court erred in giving or in refusing to give certain instructions:

I. That it was prejudicial error for it to fail to give, of its own volition, and without request, an instruction that before a conviction could be had the evidence in this case must be wholly inconsistent with defendant's innocence and consistent with no other reasonable conclusion than that of

his guilt, citing *People* v. *Rayol*, 65 Cal.App.2d 462 [150 P.2d 812]; *People* v. *Koenig*, 29 Cal.2d 87 [173 P.2d 1]; and *People* v. *Tholke*, 75 Cal.App.2d 875 [171 P.2d 904]. In each of the cases cited by defendant a request was made to give such an instruction. The trial court in this case did give instructions to the effect (1) that in case of a reasonable doubt of defendant's guilt the jury was to acquit him; (2) that defendant was presumed to be innocent until the contrary was proved beyond a reasonable doubt; (3) that if the evidence be susceptible of two constructions or interpretations, each of which appears to be reasonable, one pointing to the guilt and the other to the innocence of the defendant, the jury must adopt the one pointing to defendant's innocence; and (4) that any fact in the case may be proved by direct or circumstantial evidence, defining both.

In *People* v. *Bender*, 27 Cal.2d 164 [163 P.2d 8], the appellant, likewise, had requested no instruction on the subject-matter, and an instruction was given similar in form to the one here given. There the reviewing court concluded that even though there should have been added to the instruction given a direct statement of the precise principle under discussion, the jury was not altogether uninstructed as to the law necessary to a proper consideration of circumstantial evidence. It was there said, as it must be here said, that an "examination of the record discloses that circumstances relied upon by the prosecution and left unexplained, or with an explanation which must have appeared unreasonable to the jury, point irresistibly to defendant as the perpetrator" of the crime, and that since the quoted instruction was given, the failure to give the further instruction is not, on the facts of this record, prejudicial, and accordingly, not a ground for reversal. To the same effect are *People* v. *McClain*, 115 Cal.App. 505 [1 P.2d 1085]; and *People* v. *Hatchett*, 63 Cal. App.2d 144 [146 P.2d 469].

In *People* v. *Koenig*, *supra*, where the instruction was in fact requested but refused, the court held that the failure of the court to give the instruction suggested by the defendant was not prejudicial under the facts there related. We must reach the same conclusion here.

▮ II. The next instruction about which defendant complains is: "A person must be presumed to intend to do that which he voluntarily and wilfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own acts." Defendant cites *People* v.

*Snyder,* 15 Cal.2d 706 [104 P.2d 639], and contends that since a specific intent to steal is an element of the crime of burglary, the People cannot rest upon any such presumption. That was a case of an attempt to commit murder, and it was there held that the intent to kill may not be presumed from the firing of a gun at the victim, in itself. The defendant is not claiming, as the defendant was in the Snyder case, that he was acting in self-defense or in good faith. He merely claims that he did not make the entry nor take the goods. The best evidence that a breaking or entering was committed with the intent to steal is evidence that property within the burglarized buildings was in fact stolen. There is no better proof that a burglar intended to commit larceny than the fact that he did in fact commit it. The instruction was not prejudicial.

 III. The next instruction reiterated the stock instruction in regard to the "weight of the evidence and the greater number of witnesses," and ended up with this phrase as the test: "Does the evidence produced, either by a greater or lesser number of witnesses, produce conviction in your mind?" Stress is laid on the use of the word "conviction," arguing that the instruction in that language ignores the doctrine of reasonable doubt; that it is the duty of the jury to acquit if the evidence creates a doubt of his guilt, citing *People* v. *Ames,* 61 Cal.App.2d 522, 534 [143 P.2d 92]. This instruction is practically in the language of section 2061, subdivision 2 of the Code of Civil Procedure, and has been upheld in *People* v. *Torterice,* 66 Cal.App. 115, 123 [225 P. 760]; and *People* v. *Richardson,* 74 Cal.App.2d 528, 535 [169 P.2d 44].

 IV. An instruction to the effect that mere possession of stolen property is not of itself sufficient to justify a conviction of burglary, but may be considered as a circumstance and may be considered together with other circumstances such as "the failure of *the defendant* to give a *logical account* of the conditions under which he obtained the property" was given. The use of the words "logical account" is criticized as indicating a degree of proof less than that actually required, i. e., that it is only necessary that the "account" be inconsistent with defendant's guilt, and the instruction assumes that *defendant* did have possession of the property that was stolen. This was followed by a general instruction to the effect that "if the court, in stating to you any proposition of law, has assumed, or appears to you to have assumed, any fact or facts as proved, you will disregard such assumption

and will deduce your own conclusions . . . from the evidence . . . you alone are the exclusive judges of the facts." The instruction complained of was but a stock form and, when considered with all other instructions, is not susceptible of the interpretation placed upon it by the defendant. (*People* v. *Reynolds,* 130 Cal.App. 754 [20 P.2d 952] ; *People* v. *Brown,* 71 Cal.App. 181 [235 P. 72] ; *People* v. *Haack,* 86 Cal.App. 390, 397 [260 P. 913] ; *People* v. *Stennett,* 51 Cal.App. 370, 387 [197 P. 372].) The trial court should guard against giving stock instructions which might assume the guilt of a defendant or facts incriminating him without clearly stating to the jury that they are the judges as to whether or not such facts assumed have been established. The word "logical" is defined as being "In accordance with the inferences reasonably to be drawn from preceding or surrounding events. . . ." (Webster's New International Dictionary.) We do not believe that any prejudice resulted from the use of this word.

V. An instruction was given in the language of section 7, subdivision 1 of the Penal Code. The giving of such an instruction, even in the language of the statute, in a larceny case, was criticized in *People* v. *Stennett, supra,* but in view of the fact that an instruction was given in the language of section 20 of the Penal Code, it was held not to be prejudicially erroneous. An instruction in the language of section 20 of the Penal Code was given in the instant case. In *People* v. *Mason,* 12 Cal.App.2d 84, 87 [55 P.2d 249], it was held, as we must hold here, that defendant suffered no prejudice by the giving of that instruction in the language of the statute.

VI. Defendant next complains because the trial court, of its own motion, failed to give an instruction that the evidence of the defendant's three prior burglary convictions was to be considered only for the purpose of impeachment, and not as proof of the charge for which he was being tried, citing *People* v. *Blanks,* 67 Cal.App.2d 132 [153 P.2d 449]. In that case a request for such an instruction was refused. In the instant case, had defendant requested it, the trial court undoubtedly would have given such an instruction. Furthermore, the evidence of the prior convictions was offered by defendant as a part of his case in chief. In the absence of a request for such an instruction he should not be heard to complain. (*People* v. *Jackson,* 70 Cal.App.2d 763, 767 [161 P.2d 809].)

VII. The next complaint is directed to the failure of the court to give some instruction of its own embodying sec-

tion 22 of the Penal Code relating to defendant's "manifest intoxication," citing *People* v. *Crowl*, 28 Cal.App.2d 299, 308 [82 P.2d 507]. From a reading of the record it is not disclosed that defendant placed his defense upon that ground nor is there any substantial evidence showing that defendant was in such a state of intoxication as would require the trial court, notwithstanding his failure to request such an instruction, to *sua sponte* recognize the necessity of giving such an instruction.

IX. A similar complaint is made of the failure of the trial judge to instruct the jury that mere possession of "burglarous tools," if it deems it a fact, was not sufficient to convict him. The same conclusion must be reached as to this complaint. If counsel had been as diligent in submitting proposed instructions on these points to the trial court as he is resourceful in now pointing out claimed errors in failing to give such instructions, much time and detailed consideration could have been spared to all parties concerned.

X. Objection is next made to instructions given in the language of sections 20 and 21 Penal Code, citing *People* v. *Peterson*, 29 Cal.2d 69 [173 P.2d. 11]; and *People* v. *Weatherford*, (Cal.App.) 176 P.2d 382. The giving of an instruction in those cases, not in the language of the statute, was held erroneous. The instructions here given are in the exact language of the statute, and as thus given, it has been held not to be prejudicially erroneous. (*People* v. *Mason, supra; People* v. *Peterson, supra.*)

Defendant had a fair and impartial trial. He was convicted upon competent and substantial evidence. No prejudicial error appears in the instructions given or in the failure of the trial court to give certain other instructions not requested. No miscarriage of justice resulted. (Art. VI, § 4½, Constitution of California.)

Judgment and order affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1947.