[Crim. No. 1112.  First Appellate District, Division Two.—June 14, 1923.]

THE PEOPLE, Respondent, v. E. L. LORDEN, Appellant.

[1] APPEAL—INCOMPETENT EVIDENCE.—In the absence of an objection a fact proved by incompetent evidence is beyond attack on appeal.

[2] CRIMINAL LAW — EMBEZZLEMENT BY PARTNER — EVIDENCE — VERDICT.—In a prosecution for embezzlement, it cannot be said that a verdict of guilty is against the evidence, or contrary to law, where the evidence shows that the owner of certain corporate stock delivered the same to a partnership of which defendant was a member, the stock to be held by said partnership as collateral, that defendant without any authority to do so took the stock into his possession and made an unauthorized sale thereof, and kept the proceeds from the rightful owner of the stock.

[3] ID.—SIMILAR OFFENSES—EVIDENCE.—In such prosecution, the trial court did not commit error in receiving, over the objection of defendant, testimony of and concerning similar acts and transactions of defendant committed at about the same time.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bion S. Gregory, Chas. W. Haswell, Haswell & Pierce and C. A. Borden for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant has appealed from a judgment of conviction and an order of the trial court denying him a new trial.

He was charged in an information filed by the district attorney with having committed the crime of embezzlement, on the sixth day of March, 1922. Before we take up that particular transaction it should be recited that the complain-

---

3.  Evidence of other crimes in prosecution for embezzlement to show intent, notes, 11 **Ann. Cas.** 816; 62 **L. R. A.** 226, 264; 43 **L. R. A. (N. S.)** 774.

ing witness, Bella Gilmore, in the month of February of that year called at the office of Harrison J. De Vere, manager of the office at San Jose of Aftergood & Company, for the purpose of purchasing corporate securities. On that occasion she purchased through Mr. De Vere ten shares of Studebaker at $95 a share; ten shares of American Tobacco at $131; ten shares of Telephone at $118, and ten shares of Allis Chalmers, at $45, and ten shares of Texas Oil at something like $30. As stated, she bought the stocks on margin and at the time of the purchase she was told by Mr. De Vere that it was necessary for her to furnish collateral. As she did not understand the meaning of the expression collateral, she inquired of Mr. De Vere and he informed her that she could put up other stock which Aftergood & Company would deposit in the bank, borrow money on it, and with the money so borrowed would purchase the other stock. In accordance with that statement, in February the prosecuting witness delivered as collateral to Mr. De Vere a certificate representing Pacific Gas and Electric stock.

On the sixth day of March, 1922, Miss Gilmore again called on Mr. De Vere to purchase other stocks. After having made the purchase at that time she delivered to him certificate number 447, of which she was the owner, representing four shares of the capital stock of Reid Brothers, a corporation. Mr. De Vere said he would forward the certificate number 447 to Aftergood & Company, who would hold the certificate as collateral, and thereupon he gave Miss Gilmore a written receipt for the certificate. After that date Aftergood & Company did not call on Miss Gilmore for any further security, neither did she ever receive back her certificate representing the Reid Brothers stock, nor the certificate representing the Pacific Gas and Electric stock. She testified that she had never received any stock from Aftergood & Company, or anything at all. In her conversations with Mr. De Vere he told her that Aftergood & Company would transact the business, and that when Miss Gilmore came to close out the deal, if there was anything left out of the Reid Brothers stock she would receive the amount  He also stated to the witness that if the stock purchased on margin went down that the witness stood in danger of losing her collateral. From the time she purchased until the date of the trial the witness stated that

the stock which she had so purchased on margin did not fall in price, but increased in price. As she delivered her certificates to Mr. De Vere she signed the certificate of transfer on the back of the certificate. She so signed certificate number 447. Mr. De Vere was called as a witness by the prosecution and confirmed the several statements made by Miss Gilmore. Furthermore, he testified that when he received the certificates from Miss Gilmore that he mailed them to Aftergood & Company.

Charles J. Blumenthal was then called by the prosecution and testified that he was a stockbroker and that on the tenth day of March, 1922, he bought from the defendant, E. L. Lorden, four shares of Reid Brothers stock at a price in the neighborhood of $85 per share. That the stock so purchased was evidenced by certificate number 447, and that he paid the defendant by check.

On December 4, 1922, when Mr. De Vere was on the stand as a witness, the district attorney asked him the following questions and he made the following answers:

"Q. Calling your attention to the months of February and March of the present year, what was your occupation at that time? A. I was managing a brokerage office of Aftergood & Company in San Jose.

"Q. Do you know the defendant in this action? A. I do.

"Q. And what connection, if any, did the defendant have with Aftergood & Company, if you know? A. He was a partner in the concern."

The appellant now contends that there is no evidence in the record showing that he was a partner in the firm called Aftergood & Company. The record, as we have quoted it, refutes the contention. The statement made by Mr. De Vere was not adverted to on cross-examination, and was allowed to stand in the record for its full value. If the appellant considered that the witness was giving incompetent testimony, or that he was stating his conclusion, an objection should have been made in the trial court, or a motion to strike out should have been made. [1] In the absence of an objection a fact proved by incompetent testimony is beyond attack on appeal. (*Walberg* v. *Underwood*, 39 Cal. App. 748 [180 Pac. 55, 57]; *Sanders* v. *Austin*, 180 Cal. 664 [182 Pac. 449].) The rules of evi-

dence in civil actions are applicable also in criminal actions, except as otherwise provided in the Penal Code.

Miss Gilmore turned her stock over to Mr. De Vere to be by him turned over to Aftergood & Company to be held by that company for certain purposes only. Mr. De Vere testified that he forwarded the stock to the San Francisco office. As a partner in the firm of Aftergood & Company the defendant was entitled to the possession of Miss Gilmore's stock to the same extent and no less than any other partner. [2] When, without any authority to do so, he took the stock into his possession and made an unauthorized sale thereof, and kept the proceeds from the rightful owner of the stock, it may not be said that the verdict was against the evidence, or contrary to the law. [3] Over the objection and exception of the defendant the trial court received in evidence testimony of and concerning similar acts and transactions of the appellant committed at about the same time. The court did not commit any error in receiving such testimony. (*People* v. *Sindici*, 54 Cal. App. 193 [201 Pac. 975].) One of the similar acts was the sale by the defendant to Pinckard, Shaughnessy & Anderson on February 20, 1922, of the shares of stock in the Pacific Gas and Electric Company, which Miss Gilmore transmitted through Mr. De Vere a few days previously. Another was a sale of stock owned by Minnie Moeslein, and another one was a sale of stock owned by Harriet S. Cochran. The testimony was admissible, notwithstanding that some of the stock so embezzled was not owned by Miss Gilmore. The appellant argues that before such evidence is admissible for the purpose of proving intent it must first be made to appear that the offense for which the defendant is on trial has been proved. The answer is that in the instant case such showing had been made.

The trial court gave to the jury certain instructions regarding the law of partnerships. The appellant does not contend that they did not correctly state the law, but does contend that they were not relevant to any evidence that had been introduced. For the purpose of this decision it may be conceded that the instructions were not pertinent to the evidence introduced, but it is patent that there was nothing in any one of the instructions that was prejudicial to the defendant.

When the prosecution rested its case the defendant also rested its case without introducing any testimony. Thereafter the case was argued and the court instructed the jury. The defendant requested the court to give two instructions which were refused and the refusal is now assigned as error. The purport of each instruction was to advise the jury to acquit the defendant. The trial court did not err in refusing each of the instructions.

The last point made by the appellant is that the trial court erred in denying the appellant a new trial because "the verdict is contrary to law or evidence." The verdict was not contrary to law, nor was it contrary to the evidence. The motion was properly denied.

The judgment and order are affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 14, 1923, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 13, 1923.