[Crim. No. 1594. First Appellate District, Division One.—December 26, 1930.]

THE PEOPLE, Respondent, v. HAROLD E. ROSE, Appellant.

Albert J. McGuire and Leo A. Elkins for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

KNIGHT, J.—Appellant was indicted for the crime of grand theft, the specific charge being that he unlawfully took, stole and carried away the personal property of Mrs. Blanche Thomas, consisting of fifty shares of the capital stock of the American International Corporation, of the value of $4,000. Upon trial before a jury he was found guilty, and this appeal was taken from the judgment of conviction and the order denying his motion for a new trial.

One of the grounds urged for reversal is that the evidence is legally insufficient to sustain the judgment. The essential facts are as follows: Mrs. Thomas wanted to invest some money in corporate stock, and being entirely inexperienced in such matters she subscribed for a weekly publication edited by appellant, which purported to furnish information as to the condition of the stock market. After taking the publication for a few months she called on appellant at the offices of the publication, as a result of which she was induced to invest $1,000 in the stock of a company known as the "Coast Foundation". Shortly afterward she again conferred with him and was then advised to purchase Rainier Pulp and Paper Company stock, which she agreed to do; and for such purpose she mailed appellant a check for $2,000. She did not receive an acknowledgment of the receipt of the check, and after waiting nearly two weeks phoned appellant about the matter, and was informed, so she claims, that the delay was due merely to carelessness on his part, and that he would send her a statement at once. The next day Mrs. Thomas received a letter from him inclosing a statement of account issued by a brokerage firm showing that with her money appellant had opened an account with said firm in his own name and had purchased on margin the stock of a different company, namely, fifty shares of the capital stock of the American International Corporation; that the full purchase

price thereof was $3,868.75, against which there was a credit payment of $2,000, and that the balance due was $1868.75. The letter in which the statement was inclosed read as follows: ''As a matter of convenience in making purchases and sales, I placed the $2,000 received from you on July 25 in an account at J. J. Barneson & Co., as per statement enclosed herewith. This letter will act as your receipt for the funds and evidence that the account is held by me in trust for you. Should this manner not meet with your approval, I will be pleased to assign and transfer the account to you at any time. . . . '' Then, after describing the nature of the business of the American International Corporation and predicting a promising future for it, the letter continued: ''If you are satisfied with the manner in which I have planned to handle your account, I will arrange with the broker so he will mail to you direct statement of the account at regular intervals, so you may be familiar with it at all times. Trusting that all I have done in this regard meets with your hearty approval, and assuring you that I will handle the account in the same manner as if it were my own funds instead of yours, . . . '' In response thereto Mrs. Thomas mailed appellant a second check for $2,000, to cover the balance due on the stock. The letter accompanying the check was dated August 8th, and read as follows: ''So many appointments were made yesterday that I had to keep, by the time I arrived in that part of town the bank was closed. I hope the delay has not caused any confusion as to the plans you may have formed. Please find enclosed the check for two thousand dollars and believe me, gratefully yours, . . . '' About this time she informed appellant that she intended to sail for Australia within a few days to be gone several months, and she requested him to suspend the sending of any further mail until she returned. Accordingly she left during the early part of September, and as will hereinafter appear did not return until the following December. Upon the receipt of the second check for $2,000 appellant applied the same as a final payment on the purchase price of the American International Corporation stock; but within a few days thereafter, through the account he had opened in his name with said firm, purchased on margin the stock of several other corporations, pledging as security for the payment thereof the American

International Corporation stock belonging to Mrs. Thomas. In October there was a "break" in the stock market, and said brokerage firm sold the pledged stock in liquidation of the balance due on said account. In December Mrs. Thomas returned, and after several unsuccessful attempts to make an appointment with appellant for the purpose of obtaining possession of her stock he finally told her that while she was away her stock was lost in the crash of the market.

The main disputed issue of fact before the jury was whether Mrs. Thomas authorized appellant to speculate with her money or securities. In this regard Mrs. Thomas testified that at no time, nor under any circumstances, did she authorize him to purchase any stocks whatever on margin, nor to invest in any other stock than the Rainier Paper and Pulp Company stock; nor to pledge her stocks for any purpose whatsoever; and that whatever appellant did in that regard was done without her knowledge, consent or authority. On the other hand, appellant testified that she turned the money over to him for "trading purposes", and that before doing so it was understood that he would purchase the stocks on margin; that he assumed, therefore, that he had authority to use her money and securities as he saw fit, and that if he was mistaken in such assumption there was no intent on his part to defraud, and that consequently he cannot be held criminally responsible for the loss. It will be readily seen, however, that appellant's testimony did no more than to raise a conflict as to the main issue in the case, and since the jury accepted and acted upon the testimony of Mrs. Thomas, which along with the other facts established, is legally sufficient to sustain the conviction, its determination of the matter is controlling on appeal.

Appellant further contends that if he committed any offense at all it consisted of the misappropriation of the money Mrs. Thomas gave him to purchase Rainier Pulp and Paper Company stock, and not the American International Corporation stock which he purchased therewith. The evidence shows, however, that Mrs. Thomas ratified the purchase of the American International Corporation stock by sending him the balance due on the purchase price thereof; and that, subsequently, after the stock had been

fully paid for, and without the consent, knowledge, or authority of Mrs. Thomas, so she claims and as the jury found, he pledged the same in carrying on his own private marginal stock speculations. Therefore he was properly charged with and legally convicted of the unlawful misappropriation of said stock (*People* v. *Riccardi*, 50 Cal. App. 427 [195 Pac. 448]; *People* v. *Plum*, 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322]). The cases cited by appellant in support of his theory do not touch the point. They were decided prior to the 1927 amendment, and dealt merely with the technical distinction between larceny, embezzlement, and obtaining money under false pretenses, all of which were merged in the crime of theft under the 1927 amendment. (*People* v. *Plum, supra.*)

It is further contended that the prosecution failed to prove the value of the stock at the time of the alleged misappropriation thereof. There appears to be no direct testimony on this point, but the statement of account and the testimony given in connection therewith show that on July 24th, the date the stock was purchased, it had a market value of $3,868.75; and it was further shown that in October, when the market "broke" and the pledgee sold the stock, it still had a market value of about $40 a share. Such evidence was ample, therefore, to justify the jury in finding that at the time the stock was unlawfully pledged by appellant in August, its market value was in excess of $200; and that therefore the misappropriation thereof constituted grand theft.

At the time Mrs. Thomas sent appellant the first $2,000 to purchase the Rainier Paper and Pulp Company stock, she also forwarded to him an additional $250 on behalf of her nephew with directions to purchase therewith certain oil stocks; and over the objection of appellant the prosecution was allowed to introduce evidence tending to show that appellant appropriated the money, temporarily, at least, to his own use. We find no error in admitting the testimony, because the rule is that where the question of intent becomes a material issue in the case, evidence of other contemporaneous acts of a similar character are admissible to prove such intent. (*People* v. *Lorden*, 62 Cal. App. 501 [217 Pac. 117]; *People* v. *Sindici*, 54 Cal. App. 193 [201 Pac. 975]); and appellant was

here claiming that there was no fraudulent intent on his part in dealing with Mrs. Thomas' property as he did.

Appellant asserts that the court compelled him to argue his motion for a directed verdict in the presence of the jury; which he claims operated to his prejudice. An examination of the record discloses, however, that no arguments whatever, by either side, were made at the time the motion was presented, the court having restricted the proceeding to a mere statement by counsel for appellant of the grounds of the motion, immediately following which the motion was denied. In that state of the record no ground for complaint appears to exist.

Nor do we find any error in the refusal of the court to give appellant's instructions. The first was an instruction to return a verdict of not guilty, which in view of the conflict of evidence was properly rejected. And the legal principles embodied in the remaining two were given in another form in the court's charge. No error appearing in the record, the trial court was justified in denying the motion for a new trial.

The judgment and order appealed from are affirmed.

Cashin, J., and Tyler, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 10, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1931.