106 Cal.Rptr.2d 409 (2001)
88 Cal.App.4th 1054
The PEOPLE, Plaintiff and Respondent,
v.
Michael Joseph SPARKS, Defendant and Appellant.
No. D034981.
Court of Appeal, Fourth District, Division One.
May 3, 2001.
Rehearing Denied May 30, 2001.
Review Granted August 15, 2001.
*412 Robert E. Boyce, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Garrett Beaumont and Elizabeth A. Hartwig, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[1]
McDONALD, J.
Michael Joseph Sparks appeals a judgment following his jury conviction of one count of residential burglary (Pen.Code, §§ 459, 460, subd. (a))[2] and one count of forcible rape (§ 261, subd. (a)(2)). The jury made true findings on allegations that: (1) in committing the residential burglary Sparks personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)); (2) the forcible rape was committed during the commission of a residential burglary with the intent to commit forcible rape (§ 667.61, subds.(a), (d)(4)); (3) in committing the forcible rape he personally used a deadly or dangerous weapon (§§ 667.61, subds.(b), (e)(4), 12022, subd. (b)(1)); (4) the forcible rape was committed during the commission of a residential burglary (§§ 667.61, subds.(b), (e)(2), 460, subd. (a)); and (5) in committing the forcible rape he personally used a deadly weapon (§ 12022.3, subd. (a)).
Sparks contends: (1) the trial court erred by instructing that residential burglary can be committed by the formation of intent to rape after entry into an inhabited dwelling house but before entry into a different room in the house in which the rape occurred; (2) the trial court erred by not instructing sua sponte on the intent element of the deadly or dangerous weapon personal use allegations; (3) the trial court erred by instructing with CALJIC No. 17.41.1; and (4) his sentence is cruel and unusual punishment, violating the federal and state constitutions. We reverse the judgment of conviction of residential burglary in count 1, and the true findings on the residential burglary enhancement allegations in count 2 and the true findings on the deadly or dangerous weapon personal use enhancement allegations in counts 1 and 2; in all other respects we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On April 20, 1998, Ana I. lived with her family in a house in Vista. At about noon that day, Sparks knocked on the front door and Ana opened it. Sparks asked if her parents were home. Ana told him she was home alone. Sparks asked if she would like to buy magazines. She replied she was not interested because she could not read *413 English.[3] She told him that he could come back later because her brother might be interested. Sparks stated that he had magazines in Spanish. She replied that she still was not interested in buying magazines. He gave her a card listing the names of the magazines he had to offer and then asked her for a glass of water. Ana gave him a glass of water outside the front door. Sparks drank the glass of water and then entered the house after asking if he could come in.[4] Sparks sat down at the dining room table and continued to talk about the magazines, while Ana stood near the kitchen doorway. Ana became uncomfortable and asked him about three times to leave because she had to pick up her niece from school.[5] Ana walked into the living room to turn off the stereo. Sparks stood up and followed her into the living room. Ana then went to her bedroom to get her tennis shoes.
Sparks followed Ana to the bedroom. Ana tried to leave the bedroom, but Sparks blocked the doorway. Sparks shoved her onto the bed face down and she started screaming. He pressed a pillow against the back of her head, using both of his hands. Ana unsuccessfully tried to scratch and grab him because she could not breathe. She stopped struggling after she lost her strength because of her inability to breathe. Sparks then turned her over onto her back and she began struggling again. He pressed the pillow against her face. She stopped struggling because of her lack of strength. Sparks then raped her. Ana then climbed out the window and ran to the school and picked up her niece.
After Ana returned home, she told her sister that someone had come into the house and choked her with a pillow. Ana went to the hospital later that night and she told a police officer about the incident. Ana sustained noticeable red spots or dots on her face that remained for approximately one week.
At trial a forensic pathologist explained the physical process of asphyxia caused by smothering, and that death could occur if the mouth and nose were covered for seven to nine minutes. With oxygen deprivation, a person first becomes unconscious and eventually dies. A person's oxygen is depleted more quickly if he or she violently struggles. Asphyxia also could cause petechiae, or pinpoint hemorrhages or red spots on a person's face, resulting from a lack of oxygen and the resultant increased pressure in veins. The photographs taken of Ana's face after the incident were consistent with petechiae caused by asphyxia.
The jury convicted Sparks of both charged offenses and made true findings on all of the enhancement allegations. The trial court imposed a sentence of 29 years to life, consisting of 25 years to life for the forcible rape committed during a residential burglary with intent to rape (§§ 261, subd. (a)(2), 667.61, subds. (a), (d)(4))[6] and a consecutive four-year term for personally using a deadly weapon while *414 committing the forcible rape (§ 12022.3, subd. (a)).[7]
Sparks timely filed a notice of appeal.

DISCUSSION

I

Burglary Instructions

A
Section 459 provides:
"Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building ... with intent to commit grand or petit larceny or any felony is guilty of burglary." (Italics added.)
Section 460, subdivision (a) provides: "Every burglary of an inhabited dwelling house ... is burglary of the first degree."
Section 667.61 was enacted in 1994 as part of the "one strike" law that enhances the sentences imposed for certain sex offenses, including section 261, subdivision (a)(2) forcible rapes, if there are one or more aggravating circumstances. (People v. Palmore (2000) 79 Cal.App.4th 1290, 1295, 94 Cal.Rptr.2d 784; People v. Jones (1997) 58 Cal.App.4th 693, 703, 68 Cal. Rptr.2d 506.) Section 667.61 provides in pertinent part:
"(a) A person who is convicted of an offense specified in subdivision (c) [including a section 261, subdivision (a)(2) forcible rape] under one or more of the circumstances specified in subdivision (d) ... shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years except as provided in subdivision (j). [¶] ... [¶]
"(d) The following circumstances shall apply to the offenses specified in subdivision (c): [¶] ... [¶] (4) The defendant committed the present offense during the commission of a burglary, as defined in subdivision (a) of Section 460 [a residential burglary], with intent to commit an offense specified in subdivision (c) [including a section 261, subdivision (a)(2) forcible rape]."
The trial court instructed on burglary as follows:
"The defendant is accused in count one of having committed the crime of burglary, a violation of section 459 of the Penal Code. [¶] Every person who enters a building or any room within a building with the specific intent to commit rape, a felony, is guilty of the crime of burglary in violation of Penal Code section 459. [¶]...[¶]
"If you should find the defendant guilty of burglary, you must determine the degree thereof and state that degree in your verdict. [¶] There are two degrees of burglary. Every burglary of an inhabited dwelling house or any room within that house is burglary of the first degree. All other kinds of burglary are of the second degree." (Italics added.) "It is also alleged in count two that the defendant ... forcibly raped Ana I. during the commission of a residential burglary *415 as defined in Penal Code section 460[, subdivision] (a) ... with the intent to commit rape as defined in Penal Code section 261 [, subdivision] (a)(2), within the meaning of Penal Code section 667.61[, subdivisions] (a)[,] (d)(4). Penal Code sections 460 and 261 are defined elsewhere in these instructions. [¶] If you find the defendant guilty of the crime of forcible rape as charged in count two, you must determine whether the defendant did so during the commission of a residential burglary as defined in [subdivision] (a) of Penal Code section 460, with the intent to commit rape as defined in Penal Code section 261[, subdivision] (a)(2)."
The jury returned a verdict finding Sparks guilty of the crimes of section 460, subdivision (a) residential burglary and of section 261, subdivision (a)(2) forcible rape and that Sparks committed forcible rape during the commission of a residential burglary within the meaning of sections 667.61, subdivisions (b) and (e)(2), and 667 .61, subdivisions (a) and (d)(4).

B
Sparks asserts the trial court erred by instructing that a section 460, subdivision (a) residential burglary is committed by entry into any room within an inhabited dwelling house with the accompanying intent to commit rape.[8] He asserts that to be guilty of residential burglary, the defendant must have the requisite intent at the time he or she enters the inhabited dwelling house, not later at the time of entry into any room within that house other than the room initially entered. At trial he argued the evidence was insufficient to show he had the intent to rape Ana before he entered her house and asserts the trial court's instructional error was therefore prejudicial.
Sparks concedes that People v. McCormack (1991) 234 Cal.App.3d 253, 285 Cal. Rptr. 504 supports the trial court's instruction, but argues that McCormack was wrongly decided. In McCormack the defendant entered a house through an unlocked door, purportedly at the owner's invitation. He was observed in the kitchen and asked to leave the house. He refused and the police were called. When police arrived at the house, they found the defendant in a hallway with items taken from bedrooms in the house. The trial court instructed that the "`intent [to steal the personal property of another] need not be in the mind of the person at the time of the initial entry into the structure, if he subsequently forms the intent and enters a room within the structure.'" (McCormack, supra, at p. 255, 285 Cal.Rptr. 504.) The prosecutor argued that the defendant could have committed burglary even though he formed the intent to steal after he entered the house but before he entered one of the bedrooms. (Ibid.)
McCormack held that the trial court properly instructed the jury on burglary. (People v. McCormack, supra, 234 Cal. App.3d at pp. 255-257, 285 Cal.Rptr. 504.) It stated:
"The challenged instruction was proper because it is consistent with the literal language of the controlling code section. In its current form this code section *416 states: `Every person who enters any ... room ... with intent to commit grand or petit larceny or any felony is guilty of burglary.' (§ 459.) We have found no published decisions by a court of this state holding, on facts similar to those present here, that burglary is not committed when the intent to steal is formed after entry to a building but before entering a room therein from which the defendant intends to steal property. This is undoubtedly due to the fact the definition of burglary has included entry into a room with the requisite intent since the Penal Code was first adopted in 1872. (§ 459, as enacted 1872.)
"There are, however, numerous decisions holding that entry into a room with the required intent is burglary. [Citations.] As the plain language of the code includes entry into a room within the definition of burglary the court's instruction was proper." (Id. at pp. 255-256, 285 Cal.Rptr. 504.)
"Defendant also asserts the policies underlying the burglary statute are not served by applying the statute to the present facts because, he asserts, the members of a family sharing a home do not have individualized expectations of privacy in each room of the house. [Citation.] The statute specifically prohibits entry into a `room.' If this wording did not serve the policy intended by the Legislature it need not have been included in the statute and it could have been removed or modified at any time in the more than 100 years since this code section was first adopted." (Id. at pp. 256-257, 285 Cal.Rptr. 504.)
McCormack concluded: "Just as the initial entry into a home carries with it a certain degree of danger [to personal safety], subsequent entries into successive rooms of the home raise the level of risk that the burglar will come into contact with the home's occupants with the resultant threat of violence and harm. Applying the plain language of the statute therefore serves rather than frustrates the policy of the law." (Id. at p. 257, 285 Cal.Rptr. 504.)
We first note that although the section 459 definition of burglary includes entry into a room, the section 460, subdivision (a) definition of first degree burglary is limited to entry into an inhabited dwelling house and does not explicitly include entry into a room. However, the California Supreme Court has recognized that many of the physical areas listed in section 459 but not in section 460, including room, tenement and apartment, are by implication incorporated into the section 460 term "inhabited dwelling house." Therefore, entry into a room with the requisite intent may be an entry into an inhabited dwelling house and constitute a section 460, subdivision (a) first degree burglary. (See People v. Cruz (1996) 13 Cal.4th 764, 778, 55 Cal. Rptr.2d 117, 919 P.2d 731 [holding that a vessel may be an inhabited dwelling house within section 460].)
However, the fact that a room may be included within the term "inhabited dwelling house" in section 460, subdivision (a) does not answer the question of whether all rooms are included within the term "room" in section 459 or the term "inhabited dwelling house" in section 460, subdivision (a). McCormack answered this question by holding that any room in a house is a room within the meaning of that term in the section 459 definition of burglary and is an inhabited dwelling house within the meaning of that term in the section 460, subdivision (a) definition of residential burglary. However, the analysis of McCormack is not satisfactory: the opinion in effect is based on the unhelpful concept that a room is a room.
*417 In our view, McCormack explored neither the ramifications of its conclusion nor the rationale of the case authorities on which it relied, only one of which was decided in the context of a house. The application of the McCormack holding produces bizarre results. In McCormack the defendant entered the house by entering the kitchen without the intent necessary for burglary. If he formed the requisite burglary intent while in the kitchen he is not guilty of burglary because he did not have that intent when he entered the kitchen. However, if with the requisite burglary intent formed in the kitchen he enters rooms other than the kitchen he is guilty of a separate burglary offense for each other room he enters, and if he returns to the kitchen with that intent he is then guilty of burglary on reentering the kitchen, although he was not guilty of burglary when he originally formed that intent in the kitchen. Furthermore, were he to form the intent to commit petty theft in the kitchen and complete that crime in the kitchen he is guilty of a misdemeanor; but if he goes to another room and then reenters the kitchen, he is guilty of a felony even though he never takes the petit theft kitchen item. Finally, were the defendant to enter the house with the requisite burglary intent he is guilty of one count of burglary no matter how many rooms in the house he enters (see People v. James (1977) 19 Cal.3d 99, 119, 137 Cal.Rptr. 447, 561 P.2d 1135); but if he enters the house without the requisite intent but forms the intent in first room entered, he is guilty of a separate burglary offense for every other room in the house he enters with that intent. The result of the McCormack rule is that the penalties for the defendant's conduct are greater if he forms the burglary intent after entering the house rather than before entering the house, although it is generally thought the purpose of the burglary statute is to penalize the act of entering the house from outside because that entry is the greatest violation of the homeowner's expectation of protection against intrusion. (See People v. Elsey (2000) 81 Cal.App.4th 948, 960, 97 Cal. Rptr.2d 269.) It is difficult to accept that the burglary law was intended to function in accordance with the McCormack rule.
Except for McCormack, there appears to be only one California reported case holding that entry into a room of a house with the requisite intent formed after initial entry into the house is burglary. To the contrary, in apparent attempts to avoid the bizarre results of the McCormack rule, several cases that have considered burglary convictions arising out of entry into rooms have been careful to distinguish their cases from the entry of one room into another room in a house.
In People v. Thomas (1991) 235 Cal.App.3d 899, 1 Cal.Rptr.2d 434, the one reported case other than McCormack that considered entry between rooms in a house, the court held the entry with intent to steal into the living quarters section of a house from the attached garage by breaking through a locked door was burglary even though the defendant's entry into the garage was without the intent necessary for burglary. However, the Thomas court stated that "where a burglar enters several rooms in a single structure, each with a felonious intent, and steals something from each, ordinarily he or she cannot be charged with multiple burglaries and punished separately for each room burgled unless each room constituted a separate, individual dwelling place...." (Thomas, supra, at p. 906, fn. 2, 1 Cal.Rptr.2d 434.) The Thomas case is a room-to-room-within-a-house case because the courts have expanded the area of an inhabited dwelling house to include an attached garage. (See People v. Moreno (1984) 158 Cal.App.3d 109,112, 204 Cal.Rptr. 17.)
*418 In People v. O'Keefe (1990) 222 Cal. App.3d 517, 271 Cal.Rptr. 769, the court held that entry with larcenous intent into separate college dormitory rooms constituted separate burglaries of each separate room but in so doing distinguished dormitory rooms from rooms in a house. That distinction was unnecessary unless the rule is different for a house.
People v. Elsey, supra, 81 Cal.App.4th 948, 97 Cal.Rptr.2d 269 held that entry with larcenous intent into separate school classrooms, assigned to different teachers and pupils, locked from the outside and in several different buildings on the campus, constituted separate burglaries of each separate classroom. A substantial portion of the Elsey opinion articulates differences between separate classrooms in a school and separate rooms in a house, and as in O'Keefe, the discussion of the distinctions was unnecessary unless the rule is different for houses.
The Elsey court noted that the California Supreme Court in People v. James, supra, 19 Cal.3d at page 119, 137 Cal.Rptr. 447, 561 P.2d 1135 stated that "a thief who enters a house and steals articles belonging to different members of the same family can be punished for only one burglary. [¶] We adhere to that view, but decline to extend it to the facts of the case at bar" [which involved the entry into separately leased offices in an office building]. Recognizing this statement in James as dicta, Elsey nevertheless felt compelled to distinguish school classrooms from the implications of the James dicta that rooms within a house are not rooms within the meaning of that term in section 459.
>Elsey distinguished James on the grammatical structure and purpose of section 459. First, section 459 defines burglary as the larcenous entry into a house, room, apartment or other defined spaces. Because one cannot enter a house without entering a room in the house, the term "room" is redundant to the term "house" in the context of a house burglary. The term "room" therefore does not refer to a room in a house; the entry into a house is separately categorized. (See Elsey, supra, 81 Cal.App.4th at pp. 950, 959, 97 Cal.Rptr.2d 269.) The same consideration would apply to a room within an apartment because an apartment is a separate category in section 459. Second, Elsey described the purpose of sections 459 and 460 as addressing the reasonable expectation of premises occupants of protection from intrusion from outside the premises. (Elsey, supra, at p. 959, 97 Cal.Rptr.2d 269.) Unlike the cases that involved separate rooms in which reasonable expectation of protection from intrusion was present, "the size of the average single-family house does not ordinarily support an expectation of protection against intrusion in one part of the house if a burglar has invaded the other." (Id. at p. 960, 97 Cal.Rptr.2d 269.) We find the rationale of Elsey persuasive. When applied it is consistent with prior case authority and avoids the bizarre implications of the McCormack holding.
Furthermore, the case authorities cited by McCormack do not support its conclusion that a section 459 room includes a room within a house. The McCormack court stated that "[t]here are ... numerous decisions holding that entry into a room with the required intent is burglary. (See People v. Young (1884) 65 Cal. 225 [3 P. 813]; People v. Davis (1905) 1 Cal.App. 8, 10 [81 P. 716]; People v. Mackabee (1989) 214 Cal.App.3d 1250, 1253, 1257-1258 [263 Cal.Rptr. 183]; People v. Garcia (1963) 214 Cal.App.2d 681, 683 [29 Cal. Rptr. 609][, disapproved on other grounds in Mozzetti v. Superior Court (1971) 4 Cal.3d 699, 703, 706, 94 Cal.Rptr. 412, 484 P.2d 84]; People v. Davis (1959) 175 Cal. *419 App.2d 365, 369-370 [346 P.2d 248].)" (People v. McCormack, supra, 234 Cal. App.3d at p. 256, 285 Cal.Rptr. 504.) Although this statement is correct, none of the cited cases involved entry from one room into another room in a house. Young involved entry into a separate ticket office in a railway station, Davis (1905) involved entry into a separate room in a brothel that was assigned as separate living quarters for one of the prostitutes, Mackabee involved entry into an office area in a building otherwise open to the public, Garcia involved entry into an enclosed liquor storage room in a market otherwise open to the public, and Davis (1959) involved entry into a closed office from the lubrication room of a service station. None of these cases consider the factors described in Elsey applicable to a room in a house.
We conclude that McCormack should not be followed and that the correct rule is that burglary does not include entry into a room in a house from another room in the house, unless by the nature of the room entered there is an expectation of protection from intrusion from the other rooms that is comparable to the expectation of protection from intrusion into the house from outside the house (Elsey, supra, 81 Cal.App.4th at p. 960, 97 Cal. Rptr.2d 269); for example, where the room entered is a separate, individual dwelling place (Thomas, supra, 235 Cal.App.3d at p. 906, fn. 2, 1 Cal.Rptr.2d 434); or has other attributes, like being kept locked and secure from other rooms in the house, from which it can reasonably be inferred that the expectation of protection from intrusion is comparable to the expectation of protection from intrusion from outside the house. (See, for example, State v. Rio (1951) 38 Wash.2d 446, 230 P.2d 308, 311; State v. Howard (1902) 64 S.C. 344, 42 S.E. 173, 175.) This rule avoids the bizarre potential results of the McCormack rule and is consistent with the purposes of the burglary statutes expressed in the reported cases.
The dissent refers to bizarre potential results as inherent in the burglary statutes and that these results can be ameliorated by the application of section 654 to limit punishment for multiple convictions. The dissent's response to the inherent anomalies of the burglary statutes is to interpret them in a manner that increases rather than decreases the potential irrationality. Furthermore, even were multiple punishments for room-to-room burglaries prohibited by section 654, the convictions for burglary in each room would survive as separate serious or violent felony convictions under recidivist sentence enhancement statutes, including the "three strikes" law (§ 667, subds.(b)-(i)). Under the McCormack rule, adopted by the dissent in this case, almost every residential burglary would result in two or more serious or violent felony convictions. It is difficult to disagree with the dissent's statement that the law is the law; however, on occasion, "the law is a[n] ass." (Dickens, Oliver Twist (1984 ed.) p. 520.)
The reported cases that have considered the room entry aspect of burglary are consistent with and form the basis of an expectation of protection rule. In People v. Thomas, supra, 235 Cal.App.3d 899, 1 Cal.Rptr.2d 434, the defendant entered the garage attached to the living portion of the house without the intent required for burglary, then formed the requisite intent before entering the kitchen of the home from the garage. In sustaining defendant's conviction of residential burglary for entering the kitchen, the court pointed out that the kitchen was separated from the garage, protected and secured by a locked door that the defendant pried open with a crowbar; the house owners'"expectation of *420 privacy and security within their living quarters was clearly greater than that in their garage, even if the garage may be considered part of the entire dwelling for burglary purposes." (Id. at p. 906, 1 Cal. Rptr.2d 434; see also People v. Wilson (1989) 208 Cal.App.3d 611, 256 Cal.Rptr. 422 [entry into a room in a house rented to a lodger that was locked and available only to the lodger, not to other residents in the house]; People v. Davis, supra, 175 Cal. App.2d 365, 369-370, 346 P.2d 248 [entry into the enclosed office of a service station in which the safe was located from the lubrication area of the service station]; People v. Garcia, supra, 214 Cal.App.2d 681, 682-683, 29 Cal.Rptr. 609 [entry into a secured liquor storage cage in a market otherwise open to the public]; People v. Mackabee, supra, 214 Cal.App.3d 1250, 1257-1258, 263 Cal.Rptr. 183 [office space within a large open area otherwise available to the public bounded by waist-high counters, a wall and a swinging door]; People v. James, supra, 19 Cal.3d 99, 119, 137 Cal.Rptr. 447, 561 P.2d 1135 [separately leased office spaces in a commercial building the tenants of which had no common interest other than leasing space in the same building]; People v. Church (1989) 215 Cal.App.3d 1151, 1159, 264 Cal. Rptr. 49, disapproved on another ground in People v. Bouzas (1991) 53 Cal.3d 467, 477-480, 279 Cal.Rptr. 847, 807 P.2d 1076 [separately leased and locked offices in an office building]; People v. Davis, supra, 1 Cal.App. 8, 10, 81 P. 716 [separate rooms in a brothel, each room having been assigned as the separate living quarters of the prostitute]; People v. O'Keefe, supra, 222 Cal.App.3d 517, 520-521, 271 Cal.Rptr. 769 [entry into separate dormitory rooms in college dormitory building, each of which was assigned to different students with separate entrances and keys]; People v. Elsey, supra, 81 Cal.App.4th 948, 951-953, 961, 97 Cal.Rptr.2d 269 [entry into separate locked school classrooms, assigned to different teachers, and mostly located in separate buildings on the school campus]; People v. Young, supra, 65 Cal. 225, 226, 3 P. 813 [entry into ticket office located in the train station waiting room]; People v. Fond (1999) 71 Cal.App.4th 127, 129, 83 Cal.Rptr.2d 660 [entry into a hospital room]; People v. Fleetwood (1985) 171 Cal.App.3d 982, 985, 988, 217 Cal.Rptr. 612 [entry into a hotel room].) In all of these cases, the expectation of protection from intrusion into the room is comparable to the expectation of protection from intrusion into a house or building from outside the house or building. The evidence in the instant case does not establish that the expectation of protection from intrusion from room to room in Ana's house was comparable to the expectation of protection from intrusion into the house from outside the house and this case is therefore distinguishable from the garage to locked living quarters entry in People v. Thomas, supra, 235 Cal.App.3d 899, 1 Cal.Rptr.2d 434.
The burglary instructions in this case were incorrect. They presented the jury with two alternative legal theories of burglary: (1) entry into the house with the requisite intent and (2) entry into a room (not distinguishable from any other room) but not the house with the requisite intent. The former legal theory is correct and, in this case, the latter is not. Because we are unable to determine whether the jury found Sparks guilty on the correct or incorrect legal theory, the conviction and true findings of burglary must be reversed. (People v. Guiton (1993) 4 Cal.4th 1116, 1128-1129, 17 Cal.Rptr.2d 365, 847 P.2d 45; People v. Green (1980) 27 Cal.3d 1, 69-71, 164 Cal.Rptr. 1, 609 P.2d 468.) Nothing in this opinion precludes retrial on the correct legal theory of the residential burglary charge in count 1, and the *421 true findings of residential burglary in count 2; Sparks does not argue in this appeal that there was insufficient evidence to support a jury finding that he entered Ana's house with the requisite intent for burglary.

II

The Trial Court Prejudicially Erred in Instructing on the Deadly or Dangerous Weapon Personal Use Allegations
Sparks contends the trial court prejudicially erred in instructing on the deadly or dangerous weapon personal use allegations because it did not instruct sua sponte that he must have intended to use the pillow as a deadly or dangerous weapon.[9]

A
The information set forth, and the jury made true findings on, three separate allegations that Sparks either personally used a deadly weapon (§ 12022.3, subd. (a)) or personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)) in committing the charged offenses.
The trial court instructed with CALJIC No. 17.16 on the personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)) allegation appended to the residential burglary charge:
"It is alleged in count one, that's the burglary count still, that in the commission ... of the crime charged, the defendant personally used a deadly or dangerous weapon.
"If you find the defendant guilty of the crime thus charged, you must determine whether such defendant personally used a deadly or dangerous weapon in the commission ... of the crime.
"A deadly or dangerous weapon means any weapon, instrument, or object that is used in such a manner as to be capable of inflicting great bodily injury or death.

"The term [`]personally used a deadly or dangerous weapon[,'] as used in this instruction[,] means the defendant must have intentionally displayed a weapon in a menacing manner or intentionally struck or hit a human being with it.
"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.
"Include a special finding on that question in your verdict using a form that will be supplied for that purpose." (Italics added.)
The trial court gave a similar instruction for the section 12022, subdivision (b)(1) allegation appended to the forcible rape charge.
The trial court instructed with CALJIC No. 17.19.1 on the personal use of a deadly weapon (§ 12022.3, subd. (b)) allegation appended to the forcible rape charge:
"It is alleged in count two that the defendant personally used a deadly weapon during the commission of the crime of rape.
"If you find the defendant guilty of count two, you must determine whether *422 the defendant personally used a deadly weapon in the commission of that crime. "A [`]deadly weapon[`] is any object, instrument, or weapon which is used in such a manner as to be capable of producing[,] and likely to produce[,] death or great bodily harm.
"The term [`]personally used a deadly weapon[,'] as used in these instructions] means that the defendant must have intentionally displayed the deadly weapon in a menacing manner[,] or intentionally struck or hit a human being with it.
"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.
"Include a special finding on that question in the verdict[,] using a form that will be supplied to you for that purpose."
The trial court did not instruct with CALJIC No. 12.42 on the definition of "deadly or dangerous" weapon.[10]
In closing argument, Sparks argued that he used the pillow solely to muffle Ana's screams and not to suffocate or otherwise harm her. The prosecutor argued that Spark's intent in using the pillow was irrelevant to the deadly or dangerous weapon personal use allegations.

B
There are two classes of "deadly or dangerous weapons" and the classification of an instrument depends on its normal use. If an instrument's normal use is as a deadly or dangerous weapon, it is deemed a deadly or dangerous weapon as a matter of law. If an instrument's normal use is other than as a deadly or dangerous weapon, then there must be proof that it was capable of being used as a deadly or dangerous weapon and that the defendant intended to so use it. (People v. Graham (1969) 71 Cal.2d 303, 327-328, 78 Cal.Rptr. 217, 455 P.2d 153, disapproved on another ground in People v. Ray (1975) 14 Cal.3d 20, 32, 120 Cal.Rptr. 377, 533 P.2d 1017.) Graham stated:
"In People v. Raleigh (1932) 128 Cal. App. 105 [16 P.2d 752], [the court stated:] ... `[A] distinction should be made between two classes of "dangerous or deadly weapons." There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. The instrumentalities falling in the first class, such as guns, dirks and blackjacks, which are weapons in the strict sense of the word and are "dangerous or deadly" to others in the ordinary use for which they are designed, may be said as a matter of law to be "dangerous or deadly weapons." This is true as the ordinary use for which they are designed establishes their character as such. The instrumentalities falling into the second class, such as ordinary razors, pocket-knives, hatpins, canes, hammers, hatchets and other sharp or heavy objects, which are not weapons in the strict sense of the word and are not "dangerous or deadly" to others in the ordinary use for which they are designed, may not be said as a matter of *423 law to be "dangerous or deadly weapons." When it appears, however, that an instrumentality other than one falling within the first class is capable of being used in a "dangerous or deadly" manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a "dangerous or deadly weapon" may be thus established, at least for the purposes of that occasion.' [Citation.]" (Graham, supra, at pp. 327-328, 78 Cal.Rptr. 217, 455 P.2d 153, italics added.)
In the context of a first degree robbery conviction that required a showing the defendant was armed with a dangerous or deadly weapon, Graham stated:
"[T]he jury could conclude that [the defendant's] shoe was a `dangerous or deadly weapon' only if the jury could find that the shoe could be used in a dangerous or deadly manner and that the defendant intended so to use it. The manner in which [the defendant] did use the shoe in the present case serves as evidence that it could be used as a dangerous or deadly weapon and that he intended to use it as such against the decedent. If the jury had been instructed in accordance with Raleigh, no question would arise as to the sufficiency of the evidence on this issue." (Id. at p. 328, 78 Cal.Rptr. 217, 455 P.2d 153, italics added, fn. omitted.)
Because the jury had not been instructed on the requirement that the defendant intend to use his shoe as a deadly or dangerous weapon, Graham reversed the defendant's conviction for first degree robbery. (Id. at pp. 328-330, 78 Cal.Rptr. 217, 455 P.2d 153.) Graham stated:
"[A] critical jury issue does arise in a case such as the present in which the defendant employs an instrumentality which in the strict sense of the word does not constitute a dangerous or deadly weapon. The issue then turns on whether the instrumentality was one which, under the control of the perpetrator of the robbery, could be used in a dangerous or deadly manner and whether the perpetrator intended to use it as a weapon. In the absence of an instruction explaining the requisites for a finding that the defendant was `armed with a dangerous or deadly weapon,' the jury could not rationally apply the language of Penal Code section 211a to the facts of this case." (Id. at pp. 328-329, 78 Cal.Rptr. 217, 455 P.2d 153, italics added.)
Graham concluded: "By instructing the jury simply on the language of section 211a, the trial court did not focus the jury's attention on whether defendant intended to use the shoes as a weapon or merely to attack the deceased with his hands and feet." (Id. at p. 329, 78 Cal. Rptr. 217, 455 P.2d 153, italics added.) Graham suggested that on remand the trial court instruct the jury in pertinent part:
"Before you may find a defendant guilty of robbery of the first degree, you must find the following to be true beyond a reasonable doubt: (1) that the defendant is guilty of robbery as I have defined it; (2) that at least one of the perpetrators of the robbery possessed an instrumentality which was capable of being used by him in a dangerous or deadly manner; and (3) that its possessor intended to use the instrumentality in the robbery as a weapon of offense or defense should the circumstances require." (Id. at p. 328, fn. 11, 78 Cal.Rptr. 217, 455 P.2d 153, italics added.)
People v. Pruett (1997) 57 Cal.App.4th 77, 85, 66 Cal.Rptr.2d 750 confirmed the continuing validity of this two-part showing *424 that Graham requires when an instrument is not considered a deadly or dangerous weapon as a matter of law. Pruett stated:
"Appellant is correct that the Raleigh definition of `deadly weapon,' as adopted by the Supreme Court for assault with a deadly weapon in [People v. McCoy (1944) 25 Cal.2d 177, 153 P.2d 315] and reinforced for robbery committed with a deadly weapon in Graham, has two components to it: (1) the instrument must be `capable' of being used in a deadly fashion, and (2) the possessor must `intend' that it serve such a purpose when the crime is committed." (Pruett, supra, at p. 85, 66 Cal.Rptr.2d 750, italics added.)
We conclude that the pillow used by Sparks was not inherently a deadly or dangerous weapon; a pillow's normal use is not as a weapon and therefore it is not deemed to be a weapon as a matter of law. Therefore, an instruction on the phrases "deadly or dangerous weapon" and "deadly weapon" for purposes of the section 12022, subdivision (b)(1) and section 12022.3, subdivision (a) allegations should have set forth the required twopart showing that: (1) the pillow must be capable of being used in a deadly or dangerous manner; and (2) Sparks intended to use the pillow as a deadly or dangerous weapon. (People v. Graham, supra, 71 Cal.2d at pp. 328-329, 78 Cal.Rptr. 217, 455 P.2d 153; People v. Pruett, supra, 57 Cal.App.4th at p. 85, 66 Cal.Rptr.2d 750.) A trial court must properly instruct sua sponte on all elements of sentence enhancement allegations. (People v. Wims, supra, 10 Cal.4th at pp. 303, 314, 41 Cal. Rptr.2d 241, 895 P.2d 77.) Although CALJIC Nos. 17.16 and 17.19.1, as given by the trial court in this case, set forth the requirement that the prosecution show the pillow was used in a manner that made it capable of inflicting great bodily injury or death, it did not set forth the requirement that the prosecution show Sparks intended to use the pillow as a deadly or dangerous weapon. Therefore, the trial court erred by not instructing sua sponte that the allegations under sections 12022, subdivision (b)(1) and 12022.3, subdivision (a) require a showing that Sparks intended to use the pillow as a deadly or dangerous weapon.[11]

C
Sparks asserts the trial court's instructional error was prejudicial beyond a reasonable doubt under Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705. He acknowledges that People v. Wims, supra, 10 Cal.4th at pages 314-315, 41 Cal.Rptr.2d 241, 895 P.2d 77 held that the harmless error standard of People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243 applies to instructional errors relating to sentence enhancement allegations, but he asserts that in Apprendi v. New Jersey, supra, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, the United States Supreme Court in effect overruled Wims's basis for its conclusion and therefore the more stringent Chapman standard applies to the instructional error in this case.[12]
*425 In Wims, the California Supreme Court stated: "[A] defendant is entitled to proper jury instructions regarding the meaning of a weapon use enhancement allegation that is tried to a jury. [Citation.]" (People v. Wims, supra, 10 Cal.4th at p. 303, 41 Cal.Rptr.2d 241, 895 P.2d 77.) However, Wims concluded that the failure to properly instruct on a weapon use enhancement allegation did not violate the right to trial by jury under the Sixth Amendment of the United States Constitution as applied to the states by the Fourteenth Amendment. (Id. at pp. 303-305, 41 Cal.Rptr.2d 241, 895 P.2d 77.) Citing McMillan v. Pennsylvania (1986) 477 U.S. 79, 89-90, 106 S.Ct. 2411, 91 L.Ed.2d 67, Wims concluded: "The [United States] Supreme Court ... has specifically determined the Sixth Amendment does not require a jury fact-finding when a statutelike section 12022(b)makes weapon possession a sentencing factor rather than an element of a crime. [Citation.]" (Wims, supra, at p. 305, 41 Cal.Rptr.2d 241, 895 P.2d 77.) Wims reasoned that because no federal constitutional right was involved, a trial court's failure to instruct on an element of a weapon use enhancement allegation was subject to the Watson harmless error standard. (Id. at p. 315, 41 Cal.Rptr.2d 241, 895 P.2d 77.)
However, in Apprendi, the United States Supreme Court recently addressed the issue whether "the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury [rather than by a judge] on the basis of proof beyond a reasonable doubt." (Apprendi v. New Jersey, supra, 530 U.S. at p. 469, 120 S.Ct. at p. 2351.) The Supreme Court noted that in Jones v. United States (1999) 526 U.S. 227, 243, footnote 6, 119 S.Ct. 1215, 143 L.Ed.2d 311, it had noted that "`under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' [Citation.] The Fourteenth Amendment commands the same answer in this case involving a state statute." (Apprendi, supra, 530 U.S. at p. 476, 120 S.Ct. at p. 2355.) Apprendi concluded:
"In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: `[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' [Citation.]" (Id. at p. 490, 120 S.Ct. at pp. 2362-2363.)
Apprendi also limited the Supreme Court's prior holding in McMillan v. Pennsylvania, supra, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67: "We do not overrule McMillan. We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdicta limitation identified in the McMillan opinion itself." (Apprendi supra, 530 U.S. at p. 487, 120 S.Ct. at p. 2361.)
*426 Because of Apprendi's holding and its limitation of McMillan, we conclude Wims's underlying presumption that defendants do not have a federal constitutional right to a jury trial on weapon use enhancement allegations is no longer correct. Because a weapon use enhancement allegation can result in the imposition of a sentence more severe than the statutory maximum otherwise imposed for an offense, we conclude the Sixth Amendment right to a jury trial requires that a trial court instruct the jury on each element of an offense or enhancement allegation. (Apprendi v. New Jersey, supra, 530 U.S. at p. 476, 120 S.Ct. at p. 2355; People v. Flood, supra, 18 Cal.4th at p. 491, 76 Cal.Rptr.2d 180, 957 P.2d 869.) If a trial court does not instruct on all of the elements of an offense or sentence enhancement allegation, the prosecution is relieved of its burden to prove the offense or allegation beyond a reasonable doubt, thereby violating the Fourteenth Amendment due process clause. In this case the trial court erred by not instructing sua sponte on all of the elements of the allegations under sections 12022, subdivision (b)(1) and 12022.3, subdivision (a), thereby violating Sparks's Fourteenth Amendment due process right to a jury trial on those sentence enhancement allegations.
The Chapman standard of prejudicial error applies when a trial court omits from its instruction an element of an offense in violation of a defendant's federal constitutional right to a jury trial. (Neder v. United States (1999) 527 U.S. 1, 8-9, 119 S.Ct. 1827, 144 L.Ed.2d 35; People v. Sakarias (2000) 22 Cal.4th 596, 624-625, 94 Cal.Rptr.2d 17, 995 P.2d 152; People v. Flood, supra, 18 Cal.4th at pp. 492-507, 76 Cal.Rptr.2d 180, 957 P.2d 869.) The Chapman standard therefore logically applies when a trial court omits from its instruction an element of an enhancement allegation in violation of a defendant's federal constitutional right to a jury trial under Apprendi. In this case we therefore review the record to determine whether the trial court's instructional errors were harmless beyond a reasonable doubt. (Chapman v. California, supra, 386 U.S. at p. 24, 87 S.Ct. 824.) Yates v. Evatt (1991) 500 U.S. 391, at pages 402-403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (disapproved on another ground in Estelle v. McGuire (1991) 502 U.S. 62, 72-73, fn. 4, 112 S.Ct. 475, 116 L.Ed.2d 385), described the Chapman standard as "whether it appears `beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [Citations.]" The evidence showed Sparks pressed a pillow first against the back of Ana's head and later against her face. Sparks argued that he used the pillow only to muffle her screams. The prosecutor argued that the pillow was capable of being used as a deadly or dangerous weapon, but that it was irrelevant whether Sparks intended to use the pillow as a deadly or dangerous weapon. The trial court erred by not instructing the allegations required a showing that Sparks intended to use the pillow as a deadly or dangerous weapon. The evidence whether Sparks had such intent was conflicting and, given the prosecutor's argument that his intent was irrelevant to the enhancement allegations, we cannot conclude beyond a reasonable doubt that the trial court's instructional errors did not contribute to the jury's true findings on those allegations. (Ibid.) Therefore, we reverse the jury's true findings on the two section 12022, subdivision (b)(1) allegations[13] and *427 the single section 12022.3, subdivision (a) allegation.[14] (Chapman v. California, supra, at p. 24, 87 S.Ct. 824; Yates v. Evatt, supra, at pp. 402-403, 111 S.Ct. 1884.)

III[*]

IV

Cruel and Unusual Punishment
Sparks contends that his sentence of 25 years to life under the one strike law was cruel and unusual punishment and violated the federal and state constitutions. Because of our disposition of this case, the sentence challenged by Sparks is vacated. It is therefore unnecessary to consider whether the vacated sentence constituted cruel or unusual punishment.

DISPOSITION
The judgment of conviction of burglary in count 1, the true findings of burglary in count 2 and the true findings on the two Penal Code section 12022, subdivision (b)(1) allegations and the Penal Code section 12022.3, subdivision (a) allegation are reversed; the judgment is affirmed in all other respects.
McINTYRE, J., concurs.
BENKE, Acting P.J., dissenting.
Penal Code[1] section 459 makes it a burglary to enter any "room" (italics added) with the intent to commit theft or any felony. The majority holds no burglary occurs when an actor, already in a structure, enters a different room with the intent to commit a felony unless the nature of the room is such that it is considered as secure from entry from the interior of the structure as from the exterior, e.g., it is a separate dwelling place or is kept locked. Since this holding is contrary to the plain language of sections 459 and 460, departs from existing case authority and allows for the disparate punishment of those with equal culpability, I respectfully dissent.
The place entered in this case was a bedroom that pursuant to section 459 can be the subject of a burglary. As the majority acknowledges, People v. McCormack (1991) 234 Cal.App.3d 253, 255-257, 285 Cal.Rptr. 504, citing the language of the Penal Code and earlier cases, squarely holds that a first degree burglary occurs when a room in a dwelling house is entered with the requisite intent even if that intent did not arise until the defendant was inside the structure of which the room is a part. In so concluding, McCormack rejected the argument that finding a burglary in the entry of an individual room did not serve the policy behind the crime, i.e., the avoidance of situations with a high potential for violence. The conclusion that just as the initial entry of a house carries a danger of confrontation, subsequent entry of other rooms also creates that danger and makes reasonable the legislative determination to make every entry of a room with the requisite intent a burglary.
The majority's felt need to write additional nonstatutory qualifications into sections 459 and 460 and to depart from the McCormack rule is based on several considerations. The majority argues that the *428 McCormack rule leads to bizarre results. It notes that if an actor enters a room in a building from the exterior and only then forms the intent to commit a felony, he has not committed a burglary. If, however, having entered the first room, he forms the intent to commit a felony in other rooms, then with each entry of an additional room he commits an additional burglary, including a burglary if he returns to the first room he entered.
The reality, however, is that burglary as defined in California inherently leads to peculiar results. One person enters a large department store with the intent to commit a petty theft on the second floor. Another person enters the store with no larcenous intent until he gets on the elevator. Both abandon the idea and leave the store without attempting the theft. The first person has committed a felony, the second has committed no crime at all.
Two friends attend a party at a home. The first, a long admirer of a small porcelain figurine kept in the house, enters with the intent to take it. The second, who has never been in the house, enters, see the object and also decides to steal it. The second leaves the house to get a bag in which to put the figurine. The first is guilty of first degree burglary the minute he enters the house. The second is guilty of no crime until he, sadly, leaves the house and returns with the bag.
Clearly, application of the McCormack rule allows the creative mind to formulate disconcerting hypotheticals about the application of the law of burglary. This might be a legitimate basis for legislative amendment. However, it does not seem to me a legitimate basis for which rewriting sections 459 and 460 even if the goal is to make them more consistent.
It appears to me the majority's rule that it is a burglary to enter a room if it is a separate dwelling, for example, a bedroom in a residence rented to a nonfamily member, but that it is not a burglary to enter the bedroom of a family member leads to bizarre results. For example, a person may enter a residence without the intent to commit a theft. He walks down a hall off of which there are two indistinguishable bedrooms. The first is the bedroom of a family member, the second the bedroom rented by a family friend. Under the majority's rule, if the person enters the first with the intent to commit a theft, he commits no burglary. If he enters the second, he commits a first-degree burglary. This distinction makes no sense to me and does not serve the policy basis of the crime.
The majority posits a second unfairness in the McCormack rule. It argues, citing People v. James (1977) 19 Cal.3d 99, 119, 137 Cal.Rptr. 447, 561 P.2d 1135, that under McCormack one who enters a house with the intent to commit a felony, commits a single crime no matter how many rooms he thereafter enters, while one who forms the intent once in the building is guilty of a burglary for each room into which he goes. I do not believe James so holds. James and the case upon which it relies, People v. Bauer (1969) 1 Cal.3d 368, 378, 82 Cal.Rptr. 357, 461 P.2d 637, deal not with the definition of burglary or the determination of how many burglaries are committed in a given incident, but rather with how many burglaries may be punished in light of the multiple punishment restrictions of section 654. (See People v. Elsey (2000) 81 Cal.App.4th 948, 958, 97 Cal.Rptr.2d 269.)[2]
*429 I would note, pertinent to this issue, that one commits a burglary each time he or she enters a dwelling with the requisite intent. Thus, if a defendant enters a house with the intent to commit a theft and repeatedly leaves and reenters carrying items to his car, he is guilty of a burglary for each entry. (People v. Washington (1996) 50 Cal.App.4th 568, 577-579, 57 Cal.Rptr.2d 774.) While this may be another odd aspect of the crime of burglary, it certainly makes less troubling the idea that one is guilty of a burglary for each interior room entered.[3]
The majority next attempts to find support for its position in recent case law. It argues that in an attempt to avoid the bizarre effects of a literal application of sections 459 and 460, cases have taken pains to circumscribe the types of room-to-room entries that constitute a burglary. I do not think those cases support the majority's position.
In People v. O'Keefe (1990) 222 Cal. App.3d 517, 271 Cal.Rptr. 769, decided by this court, the defendant entered four rooms in a dormitory and was charged with four counts of burglary. The trial court instructed the jury it was required to determine whether each individual dormitory room constituted a "`separate and distinct inhabited dwelling house.'" (Id. at p. 520, 271 Cal.Rptr. 769, fn. omitted.) On appeal O'Keefe argued the evidence was insufficient to support the implied jury finding that each room was a separate dwelling. (Id. at p. 521, 271 Cal.Rptr. 769.)
There is no discussion in O'Keefe concerning whether the trial court's instruction was a correct statement of the law. Nor is there any indication the court was struggling with the implications of a literal application of the language of sections 459 and 460 to the facts of the case. The court simply accepted without discussion the defense premise that the trial court's instruction was correct and found the evidence sufficient to support the jury's implied finding.
Admittedly, the court in O'Keefe specifically rejected a defense argument that a dormitory is analogous to a single family dwelling by noting the greater expectation of privacy in an individual dormitory room. Such observation suggests the court might have believed the distinction meaningful. I agree with McCormack that it was unnecessary O'Keefe reject the defense analogy. (People v. McCormack, supra, 234 Cal.App.3d at p. 256, 285 Cal.Rptr. 504.)
In People v. Thomas, supra, 235 Cal. App.3d 899, 1 Cal.Rptr.2d 434, the defendant entered a garage attached to a house and then entered the house from the garage by breaking a locked door. The court rejected a defense argument that there could be no burglary unless the defendant entered the garage with the intent to commit a felony or theft. The court analyzed the law, including the plain language of section 459, and concluded that a *430 burglary occurs when after entering a structure one forms the intent to commit theft or a felony in a separate room of that structure and then enters it. While in summing up the court makes much of the fact that the door to the house from the garage was locked, there is nothing in the court's analysis suggesting that such fact is a sine qua non of a room-to-room burglary. (Id. at pp. 904-906, 1 Cal.Rptr.2d 434.)
The majority also cites People v. Elsey, supra, 81 Cal.App.4th 948, 97 Cal.Rptr.2d 269. In that case the defendant was charged with six counts of robbery arising from the entry on the same evening of six individual rooms at a school. The court rejected the defense argument that the evidence was insufficient to establish more than one burglary since all the rooms were in the same building. The court noted that the plain language of section 459 states that the entry of a room with the requisite intent is a burglary. The court acknowledged, however, that this did not necessarily mean that multiple charges of burglary were proper once the larger structure was entered. (Id. at pp. 954-955, 97 Cal.Rptr.2d 269.)
After reviewing over 100 years of authority, the Elsey court found that cases had consistently concluded that the entry into any type of room with the requisite intent was a burglary. The court stated: "If entry into a `room' within a building with the requisite intent can constitute a burglary, it would appear to follow that entry into multiple rooms with such intent would support multiple charges of burglary. Indeed, California courts have affirmed separate burglary convictions for entry into separate rooms in a single structure, whether it be student dormitory rooms within interconnected buildings [citation], or separately leased and locked offices in a small office building [citations]." (People v. Elsey, supra, 81 Cal. App.4th at pp. 955-956, 97 Cal.Rptr.2d 269.)
The court noted the defense argument, however, that the schoolrooms entered were neither separate dwellings nor separately leased offices. The court stated the issue was whether entry into separately secured classrooms should be treated any differently than entry into separate dwellings and separately leased offices. It answered: "The plain language of the statute, prohibiting entry into `any' house, room, or other building with burglarious intent, would support the conclusion that each entry with the requisite intent constituted a separate burglary." (People v. Elsey, supra, 81 Cal.App.4th at p. 957, 97 Cal.Rptr.2d 269.)
The court acknowledged, however, dicta in two cases that might suggest a contrary conclusion. The court noted the comment in People v. James, supra, 19 Cal.3d at page 119,137 Cal.Rptr. 447, 561 P.2d 1135, that one who enters a dwelling and steals articles from different members of the same family can be punished for only a single burglary. The Elsey court found the statement of no moment since it involved issues of double punishment under section 654 and not whether multiple burglaries had occurred. (People v. Elsey, supra, 81 Cal.App.4th at pp. 957-958, 97 Cal.Rptr.2d 269.)
The court then addressed that statement in footnote two of People v. Thomas, supra, 235 Cal.App.3d at page 906, 1 Cal. Rptr.2d 434 (see fn. 2, ante), that the entry of several rooms in a single structure each with a felonious intent "ordinarily" cannot be charged or punished as separate burglaries unless each room constitutes a separate individual dwelling. The court noted not only was this statement dicta, it cited no supporting authority. As I have noted, it also provides no reasons in support of the assertion. (People v. Elsey, supra, 81 Cal.App.4th at pp. 957-958, 97 Cal.Rptr.2d 269.)
*431 Repeatedly stating that it would accept such dicta, without deciding its correctness, the court in Elsey set about distinguishing the entry of a house, which Thomas seems to state could only be single burglary, from the entry of multiple classrooms, which Elsey had concluded amounted legally to separate burglaries. (People v. Elsey, supra, 81 Cal.App.4th at pp. 957-958, 97 Cal.Rptr.2d 269.) It is this process of distinguishing on which the majority seizes to find support for its rejection of the McCormack rule.
It seems clear to me that Elsey had serious misgivings about the correctness of Thomas's eccentric and unsupported statement. Elsey sets about distinguishing the entry of separate rooms in a house from the entry of multiple classrooms not because it was necessary to do so but because it was, in its view, possible to do so.
It is interesting to note that Elsey finds a possible grammatical basis in section 459 for distinguishing the entry of the rooms in a house from the entry of separate classrooms. It states that since the section makes it a burglary to enter a house, it would be redundant to claim that the entry of a room in the house constitutes an additional burglary.[4] The majority cites this observation with approval. However, Elsey immediately makes the following statement that seems to reject the majority's position: "Of course, where the `house' may have been entered without the requisite intent, entry into the [the house] does not constitute the burglary, allowing the court to focus on an entry into a room in the house, with the requisite intent, as the basis for the burglary. [Citations.]" (People v. Elsey, supra, 81 Cal.App.4th at p. 959, 97 Cal.Rptr.2d 269.)
I finding nothing in the cases cited by the majority that authoritatively suggests McCormack was wrongly decided.
I believe McCormack states the better and more defensible rule. Making it a burglary to enter any room in a building allows for burglaries to occur or not depending on the fortuitous location of an actor when the requisite intent is formed. That, however, is not the result of the McCormack rule but of the nature of the crime of burglary itself as defined in section 459. As I have stated, I think the majority's rule simply exchanges one set of potential anomalies and inconsistencies for another. If I must choose my anomalies and inconsistencies, then I believe I am duty bound to choose those created by the Legislature. The majority criticizes McCormack by stating that the opinion is "based on the unhelpful concept that a room is a room." (Maj.opn., p. 416.) In my view, McCormack is based on the helpful and necessary concept that the law is the law.
NOTES
[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III of the majority opinion.
[2] All statutory references are to the Penal Code.
[3] Ana apparently spoke sufficient English to converse with Sparks.
[4] At trial Ana testified that she could not remember whether she invited Sparks into the house.
[5] During their conversation, a friend of Ana's father came to the front door; Ana spoke with him; he went to the backyard without entering the house; he picked up some shorts in the backyard; and then he left.
[6] The abstract of judgment's reference to section "667.61(a)(2)(4)" appears to be a typographical error; the correct reference should be to section 667.61, subdivisions (a) and (d)(4).
[7] The trial court also imposed, but pursuant to section 654 stayed execution of, a concurrent four-year term for the residential burglary and a related one-year enhancement (§ 12022, subd. (b)). Although the trial court stated that it imposed, but pursuant to section 654 stayed execution of, terms of 15 years to life for each of "count three" (§ 667.61, subds.(b), (e)(2)) and "count four" (§ 667.61, subds.(b), (e)(4)), those "counts" were not separately charged offenses but were, instead, allegations that were sentence enhancement alternatives to the greater imposed term of 25 years to life for the forcible rape offense (§ 667.61, subds.(a), (d)(4)). Because the jury found the section 667.61, subdivisions (a) and (d)(4) allegation to be true, the lesser alternative section 667.61, subdivision (b) sentence enhancements were in effect preempted by the express provisions of section 667.61.
[8] We reject the People's assertion that Sparks waived this contention by not objecting to the instruction at trial. Improper instruction on the elements of charged offenses or enhancement allegations affect a defendant's substantial rights and that error is not waived by not objecting at trial. (§ 1259; People v. Flood (1998) 18 Cal.4th 470, 482, fn. 7, 76 Cal. Rptr.2d 180, 957 P.2d 869; People v. Baca (1996) 48 Cal.App.4th 1703, 1706, 56 Cal. Rptr.2d 445; People v. Andersen (1994) 26 Cal.App.4th 1241, 1249, 32 Cal.Rptr.2d 442.)
[9] Because the purported omission of elements in instructions on the deadly or dangerous weapon personal use allegations affected Sparks's substantial rights, we reject the People's argument that he waived any instructional error by not objecting to the instructions or by not requesting amendments to the instructions given. (§ 1259; Apprendi v. New Jersey (2000) 530 U.S. 466, 488-490, 120 S.Ct. 2348, 2362-2363; People v. Flood, supra, 18 Cal.4th at p. 491, 76 Cal.Rptr.2d 180, 957 P.2d 869; People v. Wims (1995) 10 Cal.4th 293, 303, 41 Cal.Rptr.2d 241, 895 P.2d 77; People v. Baca, supra, 48 Cal. App.4th at p. 1706, 56 Cal.Rptr.2d 445.)
[10] CALJIC No. 12.42 provides: "A deadly [or dangerous] weapon is any weapon, instrument or object that is capable of being used to inflict death or great bodily injury[.] [, and it can be inferred from the evidence, including the attendant circumstances, the time, place, destination of the possessor, [the alteration, if any, of the object from its standard form,] and any other relevant facts, that the possessor intended on that [or those] occasion[s] to use it as a weapon should the circumstances require.] [¶] [It is not necessary that a weapon in fact be used or be visible.]" (Italics added.)
[11] Sparks apparently asserts that had the trial court instructed with CALJIC No. 12.42 this instructional requirement would have been satisfied. We do not decide whether CALJIC No. 12.42 satisfies Graham's requirements; it appears that it instruction, but the intent element is not clearly set forth as a prerequisite to a true finding. We believe a modified form of Graham's suggested instruction would make that prerequisite finding clearer. (People v. Graham, supra, 71 Cal.2d at p. 328, fn. 11, 78 Cal.Rptr. 217, 455 P.2d 153.)
[12] This issue is currently before the California Supreme Court in People v. Marshall (2000) 83 Cal.App.4th 186, 99 Cal.Rptr.2d 441, review granted Nov. 29, 2000, S091666.
[13] As noted ante, one of the two section 12022, subdivision (b)(1) allegations alleged that in committing the forcible rape Sparks personally used a deadly or dangerous weapon within the meaning of section 667.61, subdivisions (b) and (e)(4), which allegation is hereby reversed.
[14] Sparks does not contend that there would have been insufficient evidence to support true findings on the three allegations had the trial court properly instructed on their elements. Because our review of the whole record shows there was substantial evidence to support true findings on those allegations, the prosecution is not barred from retrying him on those allegations.
[*] See footnote 1, ante.
[1] All further statutory references are to the Penal Code.
[2] In a footnote in People v. Thomas (1991) 235 Cal.App.3d 899, 906, footnote 2, 1 Cal. Rptr.2d 434, cited in the majority opinion, the court stated: "On the other hand, where a burglar enters several rooms in a single structure, each with felonious intent, and steals something from each, ordinarily he or she cannot be charged with multiple burglaries and punished separately for each room burgled unless each room constituted a separate, individual dwelling place within the meaning of sections 459 and 460." As the court in Elsey points out, this assertion is made without citation to authority. (People v. Elsey, supra, 81 Cal.App.4th at pp. 957-958, 97 Cal. Rptr.2d 269.) I would add it is also made without supporting reasons.
[3] Perhaps useful is this observation made by the court in Washington: "concern about absurd results is better resolved under section 654, which limits the punishment for separate offenses committed during a single transaction, than by a rule that, in effect, creates the new crime of continuous burglary." (People v. Washington, supra, 50 Cal.App.4th at p. 578, 57 Cal.Rptr.2d 774.)
[4] I would observe, however, that section 459 makes it a burglary to enter any building with the requisite intent. Thus, by Elsey's reasoning it would be redundant to claim that the entry of any room in any building constitutes an additional burglary.